[No. 1915. Decided April 6, 1896.]

CHARLES S. HINCHMAN, *Respondent*, v. POINT DEFI-
ANCE RAILWAY COMPANY *et al., Defendants*, JOHN
C. LEWIS, *Trustee, et al., Appellants.*

APPEAL — ESTOPPEL — MORTGAGE OF STREET RAILROAD — VARIANCE
— UNRECORDED CHATTEL MORTGAGE.

The fact that a junior mortgagee has accepted a portion of the
proceeds arising from the sale of property under a decree foreclos-
ing his and the senior mortgage will not estop him from appealing
from such portion of the decree as would in no wise affect or destroy
the part awarding him such sum.

Under a mortgage of a street railway operated by steam and its
appurtenances, which by its terms includes " also all poles, wires,
stringers, dynamos, etc., materials for constructing, maintaining,
operating, altering, repairing and replacing the said line of railway
and extensions, together with all rights, privileges and immunities
now owned, held or enjoyed by the Point Defiance Railway Company,
or to be acquired by it during the term of this mortgage," the mort-
gage covers electrical appliances which had been already purchased
but which were not accepted and paid for until after its execution;
and also an extension of the track for which right-of-way had been
procured and surveyed, although the track was constructed by
another company which subsequently bought out the mortgagor.

One who, after having sold certain property, accepts a mortgage
thereon is estopped in a foreclosure proceeding from setting up a

claim of ownership thereof by virtue of a provision in the contract of sale that the title should remain in the seller until payment, when there is no pretense that any of the parties to the foreclosure had notice of such condition.

In an action based upon promissory notes which had been signed upon their face by the defendant as maker, it is not a variance to put such notes in evidence, although containing an endorsement over the signature of individuals who had not been made parties, to the effect that "we hereby severally join in the execution of the within notes as original makers thereof and waive presentation and protest notice."

A mortgagee of a subsequent purchaser of personal property who takes with notice that there is an unrecorded mortgage on the property is not protected by Gen. Stat., § 1648, which provides that mortgages of personal property shall be void as against creditors of the mortgagor, or subsequent purchasers and incumbrances of the property for value and in good faith, unless it is recorded.

The mortgagee of a street railway with all its appliances is not entitled to a lien upon property purchased by a subsequent company which had bought the mortgaged property and operated it in connection with another railway line, when such after acquired property was not within the contemplation of the mortgage, and was not purchased until after the mortgagor had parted with the ownership of its portion of the road.

Appeal from Superior Court, Pierce County.— Hon. W. H. PRITCHARD, Judge.    Reversed.

*O. F. Paxton,* and *Burke, Shepard, Woods & McGilvra,* for appellant.

*Doolittle & Fogg,* for respondent.

The opinion of the court was delivered by

GORDON, J.—On the 27th day of November, 1891, the Point Defiance Railway Company of Tacoma owned and operated about six miles of railway, and had leased and was operating one mile additional making in all about seven miles, running from near Point Defiance Park to South Ninth street, in said city.   The road was mainly along the streets and public highways of the city, under franchises granted by

the city and by the board of commissioners of the county. It had been operated by steam at all times prior to the 27th day of November 1891, on which day said company executed a mortgage to Henry Wood, trustee, to secure five promissory notes bearing even date therewith, made by said company and nine individuals, said notes being in the sum of $10,000 each, aggregating $50,000, for borrowed money. The notes by their terms became due and payable one year after date, with interest at ten per cent. per annum until maturity, and at the rate of twelve per cent. per annum thereafter. Each note contained a provision to pay an attorney's fee equal to five per cent. of the amount due, in case of suit for collection being commenced. This mortgage was recorded in the records of real property mortgages of Pierce county, but was not recorded as a chattel mortgage. The description contained in said mortgage is in part as follows:

"All of the following described property, real and personal, of the said Point Defiance Railway Company, situated in the county of Pierce and state of Washington to-wit: All of the line of railway of the said Point Defiance Railway Company, together with its rights of way and franchises as hereinbefore mentioned and described, its rolling stock, roads, roadbeds, ties, rails, switches, turnouts, motor houses, engine houses, tools and machinery of every description, also all sidetracks, sidings, spur tracks, now or hereafter acquired by it for use in connection with the said railway line as now constructed, also all real estate grants, ways and rights of way, licenses, easements, depot grounds and lands used in connection with the operation and maintenance of the said line of railway and extension thereof, and all tracks, ties, bridges, viaducts, fences, culverts and other structures, also all wood houses, coal houses and other buildings, also all poles, wires, stringers, dynamos, fuel, supplies, materials for con-

structing and maintaining, operating, altering, repairing and replacing the said line of railway and extensions, together with all rights, privileges and immunities now owned, held or enjoyed by the said Point Defiance Railway Company, or to be acquired by it during the term of this mortgage."

On the 17th of July, 1891, said railway company entered into a written contract with the Edison General Electric Company, a corporation of the state of New York, to purchase four trucks, eight motors and certain car equipments. By the terms of said written contract it was provided, "that the title and ownership of the property called for and furnished under the terms of this contract shall remain in the Edison Company until full and final payment shall be made therefor." It appears that payment therefor was not made until some time in January thereafter. On the 3d day of February, 1892, said Point Defiance Railway Company sold its railway to a corporation known as the Point Defiance, Tacoma & Edison Railway Company, and about the same time said new corporation also purchased another line of about seven miles of railway, running from South Ninth street in the city of Tacoma to the town of Edison, which latter line had theretofore been known and operated as the Wapato Park Belt Line Railway Company, and was a steam railroad. Thereupon the Point Defiance, Tacoma & Edison Railway Company connected the two railways at said South Ninth street, forming a continuous line of about fourteen miles of railway and thereafter extended the line northerly about a mile to Point Defiance Park. This extension, however, was in contemplation by the Point Defiance Railway Company prior to the making of the mortgage hereinbefore referred to, and a survey of the line had been made and the right of way therefor had also been secured.

On March 10, 1892, the Point Defiance, Tacoma & Edison Company made a contract with the Edison General Electric Company, to furnish, for $11,377, ten electric motors and five trucks and car equipments complete. The contract under which the same were furnished contains a provision reserving the title to said electric company until the property so furnished was paid for. Payment therefor has never been made.

On the 12th of March, 1892, said railway company made a contract with the Northwest Thomson-Houston Electric Company (now the Northwest General Electric Company), to furnish said road with two cars, three trucks, ten electric motors, equipments for one old car, and to furnish the poles, wires, connections and construct about thirteen and one-fourth miles of overhead equipment for the operation of an entire line of railway by electric power, all for the sum of $40,950. The property was furnished in accordance with the contract, but no part of the contract price has been paid.

On the 20th of July, 1892, the railway company entered into a further contract with said Northwest General Electric Company to furnish one car and equipment, one truck and two electric motors, all for the sum of $3,750, which property was furnished but has never been paid for. The cars, trucks, motors, poles, wires and equipments purchased by said Point Defiance, Tacoma & Edison Railway Company from the Edison General Electric Company, the Northwest Thomson-Houston Electric Company and the Northwest General Electric Company, as hereinbefore mentioned, were used by said railway company for electrifying, equipping and operating its entire line of railway, viz., about fourteen miles, from Edison to Point

23 — 14 WASH.

Defiance Park; and the cars, trucks, locomotives and equipment which had theretofore been used in operating what had been the Point Defiance Railway Company, and which were included in the mortgage executed by said last-mentioned company to Henry Wood, trustee, (hereinbefore described), have been preserved, the steam equipment having been supplanted by the electric equipment merely.

On the 18th day of January, 1894, the Point Defiance, Tacoma & Edison Railway Company made and delivered to John C. Lewis, as trustee, a mortgage upon all the cars, trucks, motors and equipment, poles, wires and overhead equipment of its entire line of railway, viz., about fourteen miles, and also upon that portion of its railway track and franchises extending from Point Defiance Park to South Ninth street. This last mentioned mortgage was given to said Lewis, trustee, to secure an indebtedness to the Edison General Electric Company amounting to $11,267.73, to the Northwest General Electric Company amounting to $45,182.20, to the Mason Mortgage Loan Company, a corporation, in the sum of $10,000, to the Fidelity Trust Company, a corporation, in the sum of $11,-609.96, to the Bank of British Columbia, a corporation, in the sum of $5,000, to the Tacoma Railway & Motor Company, a corporation, in the sum of $3,445.96, to W. H. H. King, in the sum of $1,000, and to T. B. Wallace, as agent for the holders of sundry vouchers theretofore issued by said railway company, in the sum of $9,200.44; aggregating about $90,000.

This mortgage was duly recorded in the office of the auditor of Pierce county, both as a mortgage of real estate and as a chattel mortgage. The present action was brought by Charles S. Hinchman, assignee of the Henry Wood mortgage, to foreclose the same, and the

Point Defiance Railway Company, the Point Defiance, Tacoma & Edison Railway Company, John C. Lewis, as trustee, and the Northwest General Electric Company, were made parties defendant in said suit.

The Point Defiance Railway Company and the appellant Lewis answered separately. The appellant Lewis, as trustee, by way of answer and cross-bill, sought the foreclosure of the mortgage executed to him, and in said answer denied that respondent's mortgage was a lien upon any property except that owned by the Point Defiance Railway Company at the time when said mortgage was made, and asserting that said mortgage was void as against his (Lewis') mortgage, because the same was not recorded as a chattel mortgage; also claiming a first lien by virtue of his mortgage upon all of the property described therein, and *an exclusive lien* upon all of the motors, cars, electrical equipment, poles, wires, etc., which were purchased by the Point Defiance, Tacoma & Edison Railway Company from the several electric companies hereinbefore mentioned, subsequent to the purchase and consolidation by said railway company of the old Point Defiance railroad and the Wapato Park Belt Line railway.

Upon the issues thus made up, the case proceeded to trial before the superior court of Pierce county, and upon findings and conclusions duly made, a judgment and decree were entered, holding and determining that the mortgage of the respondent was a lien *upon all the property described in the mortgage executed by the Point Defiance, Tacoma & Edison Railway Company to appellant Lewis;* that all of the beneficiaries under the Lewis mortgage, except only the Bank of British Columbia, had, at the time the Lewis mortgage was made, notice of respondent's mortgage; that the

legal effect of such notice was equivalent to recording said mortgage; and respondent was decreed a prior lien upon all of the property in question, excepting only as against the $5,000 claim of the Bank of British Columbia (one of the beneficiaries in the Lewis mortgage.) This appeal is taken by Lewis, and the Northwest General Electric Company joins therein. The appeal is from those parts of the decree which make the respondent's mortgage a lien upon the property afterwards acquired by the Point Defiance, Tacoma & Edison Railway Company, and which gives priority to the respondent's mortgage in the distribution of the proceeds of the sale.

Upon the part of the respondent it is objected that appellant is estopped in this case to prosecute his appeal, for various reason, only one of which, however, we deem of sufficient importance to require notice. It is that appellant Lewis applied for and received from the clerk of the lower court the sum of $1,856, being the balance remaining in the hands of said clerk from the proceeds of the sale of the property in question pursuant to the decree, after respondent's mortgage had been paid in full from the proceeds of said sale. We do not think the objection is well taken. Both of the mortgages in question were foreclosed by the decree, and it is apparent that the appellant is entitled in any event to all that he received, no matter what disposition is made of the case. His appeal is from portions of the decree only, and we do not think that receiving such of the proceeds as would in any event belong to him should be held to estop him from prosecuting the appeal. The modification or reversal of those parts of the decree which are appealed from would in no wise affect or destroy the remaining por-

tions.  Respondent's objections must therefore be overruled.

The principal grounds advanced for a reversal or modification of the judgment and decree may be stated as follows:

1. That the lower court erred in holding that respondent's mortgage was a lien upon the eight motors, four trucks and car equipments and one and one-half miles of overhead construction furnished by the Edison General Electric Company under its contract made with the Point Defiance Railway Company, of date July 17, 1891.

2. That the court erred in not providing in the decree for saving the rights of the Edison General Electric Company as to the ten motors, five trucks and apparatus furnished under the contract of March 10, 1892.

3. That the court erred in holding that the beneficiaries under the Lewis mortgage had notice at the time their mortgage was made of the existence of respondent's mortgage.

4. That the court erred in overruling appellant's objection to the introduction in evidence of the five notes offered by respondent as the basis of his recovery.

5. That the court erred in holding that the respondent's mortgage, although not recorded as a chattel mortgage, was a lien upon the mortgaged personal property as against the Lewis mortgage.

6. That the court erred in holding that the respondent's mortgage was a lien upon the nine trucks, twenty-four electrical motors, six cars and thirteen and one-fourth miles of poles, wires and overhead electrical equipment, purchased by the Point Defiance, Tacoma & Edison Railway Company, for the use of

its entire line of railway, after it bought and consolidated the two roads.

As regards the first contention, the materials and equipment furnished under the contract entered into July 17, 1891, were shipped from the east by said electric company and consigned to it at Tacoma during the summer and early fall of that year. While the materials and equipment so furnished were not formally accepted by the railway company until some time in January, 1892, when payment was made therefor, nevertheless, it was in the actual possession of the road at the time of the execution of respondent's mortgage. It is not contended that respondent or his assignor had any knowledge of the provision in the contract which reserved to the vendor title to the property, and it is apparent from the description contained in respondent's mortgage that it was intended to cover the material and equipment so furnished. The language "all poles, wires, stringers, dynamos," etc., could only relate to a road to be operated by electricity and would be inappropriate to the description of the equipment of a railway operated by steam. The property was in existence and, as against the respondent's assignor, must be held to have been the property of the mortgagor at the time that said mortgage was given. We think, also, that the description in respondent's mortgage was sufficient to include and embrace the extension of one mile of track which, as already noticed, was in contemplation by the Point Defiance Railway Company prior to the execution of respondent's mortgage, and which had theretofore been surveyed and the right-of-way therefor procured. It is true that this mile of track was *actually* constructed by the Point Defiance, Tacoma & Edison Railway Company, after the purchase, but the mort-

gage attached to and operated upon it from the moment of its construction, because, from the language of the mortgage and in contemplation of law, it was the intention of the parties that it should so attach.

2. Nor do we think that the court erred in failing to make provision in its decree, saving the rights of the Edison General Electric Company as to the motors, trucks and apparatus furnished by it under the contract of March 10, 1892. We have been unable to ascertain from the record that said company asserted in the court below any claim of title to this property. It did not tender an answer of its own, but it is seeking, as one of the beneficiaries under the mortgage executed to appellant Lewis, as trustee, the foreclosure of that mortgage and payment to it of the purchase price of the property so furnished, and in the answer of appellant Lewis it is asserted that after the commencement of this suit and prior to the filing of said answer, said Edison General Electric Company made and delivered to said appellant Lewis as such trustee, "a written notice, request and demand, requesting, requiring and demanding of him that he proceed to foreclose the said mortgage," etc. Said answer also asserts that, at the time when said mortgage to appellant Lewis was executed by the Point Defiance, Tacoma & Edison Railway Company, said company *was the owner and in possession of all of the property therein mentioned and described.* We are unable to perceive how said company can maintain an action to foreclose a mortgage upon property which it claims to own and be entitled to the possession of. The positions are inconsistent, and we think that by accepting a mortgage upon the property and thereafter proceeding to foreclose the same, it has elected to treat such property as the property of the mortgagor

and cannot now be heard to assert a claim to the ownership thereof by virtue of a provision in a contract of which it is not pretended any of the parties to the present proceeding had notice.

3. The next proposition relied upon challenges the sufficiency of the evidence bearing upon the question of notice by the beneficiaries under the Lewis mortgage of the existence of respondent's mortgage. As already noticed, the lower court found that all of said beneficiaries save one, the Bank of British Columbia, had notice of the existence of respondent's mortgage at the time when the mortgage was made to appellant Lewis. An examination convinces us that the evidence is sufficient to sustain such finding, and it is neither desirable nor important that we should enter into an analysis of the evidence for the purpose of disposing of this contention.

4. Respondent's complaint is based upon five promissory notes alleged to have been made by the Point Defiance Railway Company. The pleadings put in issue the notes sued upon, and upon the trial the respondent offered, and the court, over the objection of appellant, permitted the introduction of the notes in evidence. Each of said notes is, upon its face, signed by the Point Defiance Railway Company, by H. C. Wallace as president, and attested by Stuart Rice, secretary; and upon the back of each of said notes the following appears: "We hereby severally join in the execution of the within note as original makers thereof and waive presentation and protest notice." Then follow the signatures of nine individuals. Appellant urges that the notes set forth in the complaint are the notes of the Point Defiance Railway Company alone, and that there is a variance between the proof and the allegation. We think otherwise.

It was entirely competent for the respondent to bring the action against one of the makers only without joining the others and it was not the less the note of such corporation merely because of the fact that it was also the note of each of the other makers.

5. It is next contended that the property described in both mortgages is nearly all personal property; that the mortgage of respondent was not recorded as a chattel mortgage; and appellant insists that the failure to record the same as a chattel mortgage rendered the mortgage void as to appellant Lewis; that as against a subsequent mortgagee of said property notice of such prior unrecorded mortgage does not render the same valid. Sec. 17, art. 12, of the constitution of the state is as follows:

" The rolling stock and other movable property belonging to any railroad company or corporation in this state shall be considered personal property, and shall be liable to taxation and to execution and sale in the same manner as the personal property of individuals, and such property shall not be exempted from execution and sale."

Sec. 1648, Gen Stat., is as follows:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchasers, and incumbrances of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property."

Counsel for appellants contend that this section "makes the unrecorded mortgage void as against creditors of the mortgagor, and as against creditors of subsequent purchasers, and as against incumbrances put upon the property for value and in good faith."

The language of § 1648 is somewhat ambiguous, but we cannot countenance the construction for which counsel for the appellants contend.  We think the true interpretation to be given the section requires the transposition of the comma appearing after the word "purchasers," as found in said section, by placing it after the word "mortgagor," making the section read as follows:

"A mortgage of personal property is void as against creditors of the mortgagor, or subsequent purchasers and incumbrances of. the property for value and in good faith."

So interpreted the section harmonizes with the statutes of New York, Michigan, Ohio, New Jersey, Nebraska, Minnesota, Kansas and the Dakotas, as such statutes. have been interpreted by the courts of last resort in those states, and best accords with reason.

Manifestly, there are three classes of persons whose rights are defined by this section.  They are, (1) creditors of the mortgagor; (2) subsequent purchasers, and (3) parties in whose favor subsequent incumbrances of the property are made.  As to the first class —creditors,—the unrecorded mortgage is absolutely void.  It is void, also, as to the two latter classes when they deal with the mortgaged property for value and in good faith.  Subsequent purchasers and parties taking subsequent incumbrances upon the property are thus placed upon the same footing, and in all reason why should they not be?  But, to adopt the construction for which appellants contend would require us to hold that an unrecorded mortgage is absolutely void as against the " creditors of the mortgagor," and as against " creditors of subsequent purchasers," and would leave the rights of subsequent purchasers of

the property wholly unaffected and undetermined by the statute. The three classes affected by the statute under the construction claimed by the appellants would be first, creditors of the mortgagor; second, " creditors of subsequent purchasers," and, third, persons subsequently taking incumbrances upon the property. It might be asked, what possible reason could the legislature have had for including " creditors of a subsequent purchaser " as a class within the provisions of this statute? On the other hand, there are many reasons why the rights of subsequent purchasers of property embraced within an unrecorded mortgage should be defined by statute. Appellants also insist that the words " good faith " do not mean or include " without notice," and they argue that there is no want of good faith on the part of one who secures " a lien on his debtor's property, which property may have been included in a chattel mortgage which the law declares to be void as to him." But we answer that the law has not declared the unrecorded mortgage absolutely void as to a subsequent purchaser or mortgagee, but only void as to such purchaser or mortgagee for value and in good faith. As between the mortgagor and mortgagee the mortgage is valid although not recorded, and we do not think that one who takes a subsequent mortgage upon property which he knows is embraced within the prior unrecorded mortgage of another can be permitted to assail such prior mortgage because of the mere failure to record it. Besides, we think this court has decided the question adversely to the contention of the appellants in *Roy & Co. v. Scott, Hartley & Co.*, 11 Wash. 399 (39 Pac. 679), and *Chase v. Tacoma Box Co.*, 11 Wash. 377 (39 Pac. 639). Such, too, was the holding of the territorial supreme court in *Darland v. Levins*, 1 Wash. 582 (20 Pac. 309).

6. The final contention must be upheld. We think that the court erred in holding that respondent's mortgage was a lien upon the property which was purchased by the Point Defiance, Tacoma & Edison Railway Company, after it bought and consolidated the two roads, said property consisting principally of trucks, electrical motors, cars, etc., purchased by said last mentioned railway for, and used upon, the entire line of its road from Edison to Point Defiance Park. We think that appellant is right in asserting that this property was purchased for a different railroad from that upon which respondent's mortgage was executed. It was purchased long after the maker of that mortgage had ceased to have any interest in the property covered by it. That it was not in existence or contemplated at the time respondent took his mortgage, and that no part of the money secured by that mortgage was loaned upon the faith or credit of the property so afterwards acquired, is apparent. It was not an accession to the property mortgaged by the old railway company to the respondent. No part of it was ever owned by the maker of respondent's mortgage. No part of it was in existence when said mortgage was made or came into existence at any time thereafter while the maker of respondent's mortgage continued to own the road. Nor can it be said that it was purchased by the new company to replace the former equipment of the line covered by respondent's mortgage. The most that can be said is that it was bought by another company to be used and was used in equipping a line of road only a portion of which had been owned by the maker of respondent's mortgage.

We think that the equities of these parties who furnished the property in question and who are the principal beneficiaries in the Lewis mortgage, are superior

to those of the respondent, and as to that portion of the property the appellant Lewis was entitled to an exclusive lien, and the decree should have been accordingly.

The cause will be remanded for further proceedings in accordance herewith, and the appellants will recover costs.

HOYT, C. J., and ANDERS and DUNBAR, JJ., concur.