Huntington, etc., Bank, Trustee, *v.* Mason—85 Ind. App. 320.

## HUNTINGTON COUNTY STATE BANK, TRUSTEE, ETC.,
### *v.* MASON.

[No. 12,578.   Filed November 18, 1926.]

1. APPEAL.—*Accepting benefits from judgment when two causes consolidated for trial only.*—Where suits to foreclose two separate mortgages on the same property were consolidated for trial only, the acceptance of benefits from the judgment in one of them will not preclude an appeal from the judgment in the other.   p. 321.

2. MORTGAGES.—*Evidence held to sustain finding of duress in executing mortgage sued on.*—Evidence *held* sufficient to sustain the defense of duress in a suit to foreclose a mortgage where, at the time of the execution of the mortgage, the mortgagor, a woman seventy-eight years old, living in the same house with her brother and his son, was informed by agents of the mortgagee that the nephew had issued fraudulent checks to it and others, that the sheriff was in waiting with a warrant for the nephew's arrest, and that unless she executed the notes and mortgage sued on, he would be arrested and sent to the penitentiary, and that she signed the papers because of her fear of the consequences if she refused to do so.   p. 322.

3. MORTGAGES.—Evidence *held* not to show ratification of the execution of a mortgage claimed to have been executed under duress.   p. 327.

From Wabash Circuit Court; *Frank O. Switzer,* Judge.

Suits by the Huntington County State Bank, as trustee, to foreclose two mortgages executed by Rebecca J. Mason, the two being consolidated for trial only.   From a judgment for defendant in one of said suits, the plaintiff appeals.   *Affirmed.*   By the court in banc.

*Fred H. Bowers, Milo N. Feightner, Lee M. Bowers* and *Frank Plummer,* for appellant.

*C. K. Lucas, H. B. Spencer* and *Herman Hipskind,* for appellee.

NICHOLS, J.—Under date of October 26, 1909, appellee executed to the Aetna Life Insurance Company her note in the sum of $1,500, and a mortgage on real estate

MAY TERM, 1926. 321

Huntington, etc., Bank, Trustee, *v.* Mason—85 Ind. App. 320.

to secure said note. The note and the mortgage were afterwards assigned to appellant trustee.

At a subsequent date, appellee executed and delivered to appellant trustee another mortgage on the same real estate to secure a note for $200 to the State Bank of Andrews, another for $441.10 to the First National Bank of Huntington, another for $305 to the Huntington Securities Company, another for $558.98 to the Huntington State Bank and one for $794.53 to Huntington Trust and Savings Bank. These notes last mentioned were signed by appellee and her nephew, Clarkson J. Mason. These last notes were given, and the mortgage was made to secure the notes to pay off obligations which Clarkson J. Mason owed the several banks above named. He had given checks to these several banks to take up notes which were claimed to be forgeries, and signed by him and others, and the checks given were not paid because he had no funds in any of the banks to pay the checks when they were given.

Actions were brought on these two mortgages, and the actions were afterwards consolidated. Judgment was rendered on the note and mortgage given to the

1. ˙ Aetna Life Insurance Company, but answers were filed to the other action, a trial was had, and there was a finding and judgment for appellee. The error assigned is the court's action in overruling appellant's motion for a new trial. Appellee has filed her motion to dismiss the appeal for the reason that appellant accepted benefits under the judgment on the first note and mortgage. But this motion is overruled. The actions were separate and consolidated only for trial. Under such conditions, benefits under a judgment on one paragraph will not preclude an appeal from a judgment on the other. *Gilfillan* v. *McKee* (1895), 159 U. S. 303, 16 Sup. Ct. 6, 40 L. Ed. 161; *Worthington* v. *Beeman*

(1899), 91 Fed. 232; *Upton Mfg. Co.* v. *Huiske* (1886), 69 Iowa 557, 29 N. W. 621; *State* v. *Wells, Fargo & Co.* (1912), 64 Ore. 421, 126 Pac. 611; *Hinchman* v. *Point Defiance R. Co.* (1896), 14 Wash. 349, 44 Pac. 867.

Under the error assigned, it is contended that the decision of the court is contrary to law, under which questions of duress and subsequent ratification are presented. Upon the first question, the substance of the evidence as briefed by appellee and not disputed by appellant shows that appellee Rebecca J. Mason was an unmarried woman about seventy-eight years of age at the time of the execution of the notes and mortgage in suit. That she has been an active woman having taught school for a number of years, and later had been employed for a number of years as a stenographer. That she was active in religious work. That she was the owner of the land in question and that in the house on the land she retained a room in which she lived. The house was also occupied by her brother Samuel and wife and invalid son, and also by her brother's son, Clarkson Mason, and his wife. That on December 2, 1922, two days before the execution of the notes and mortgage sued upon, appellee's nephew, the said Clarkson, was indebted to the various banks to whom such notes were given. That on said day he executed checks to the various banks for the notes held by them respectively, and took up the notes upon which he was indebted. That he had no money on deposit in the banks upon which the checks were drawn. That on the morning of December 4, 1922, one Lyman Jackman had a conference with Clarkson Mason, upon the highway, and that in the afternoon of the said day, he, with one Porter Ayres, cashier of the Huntington County State Bank, was driven to the home of appellee by the sheriff of Huntington county. That Jackman and Ayres went into the house, but the sheriff remained on the out-

side. That Jackman and Ayres had a conference with Clarkson Mason and wife, and with his father Samuel Mason, and later with appellee, and after the conference, the notes were executed by her and Clarkson Mason, and the mortgage executed by her. Upon what happened and what was said and done at this conference depends the question of whether or not the instruments in suit were executed by appellee under duress.

Appellee testified that Jackman informed her that her nephew Clarkson had been violating the law, and had given checks on banks where he had no money, that he was liable to arrest and imprisonment and that the only way to prevent that, would be for her to sign notes and mortgages to cover the debt. That she hesitated, and that Jackman spoke more emphatically, but repeated what he had said before, that if she didn't do this, that they were there to arrest her nephew, that an officer was outside waiting for that purpose, that he would be sent to jail and to the penitentiary, and that she was "dumb and afraid" and signed the papers.

Clarkson Mason testified that Jackman told appellee that the sheriff was outside in the car with a warrant in his pocket for Clarkson's arrest, and wanted to know if there was some way it could be fixed up, so as to save arresting him. He said that the notes and mortgage on the said real estate would be signed, and he told her that if it was not settled up, that the sheriff would serve the warrant.

Clarkson also testified that, before the appellee was called into the conference, Jackman had said, "We want to see her."

Mrs. Lillie Mason, wife of Clarkson, testified to the conversation at that time, in substance the same as Rebecca and Clarkson, and on re-examination, she testified that Jackman said, "We will have to see Rebecca." She

324    APPELLATE COURT OF INDIANA,

Huntington, etc., Bank, Trustee, *v.* Mason—85 Ind. App. 320.

also testified that Jackman told appellee that the sheriff was out in the machine with a warrant in his pocket, and that she would have to sign the notes to straighten out the matter.

Porter Ayres and Lyman Jackman, the two witnesses on behalf of appellant, testified as to what occurred in this conversation. Porter Ayres testified that Jackman asked Samuel Mason if he owned the farm, and if he couldn't help Clarkson, but the father said that appellee owned the farm. That, when appellee came into the room, she was informed as to what had happened and she said if she could do anything to straighten up the matter, she would be glad to do it. That she didn't have the money but if she had she would be willing to settle the checks. He denied that it was stated to her that if she didn't sign the mortgage the said Clarkson would be sent to the penitentiary, or prosecuted. That he and Jackman told her she could secure it by mortgage and give him, Clarkson, a chance to pay it, and that she said she would. On cross-examination, he admitted that we told them that the issuance of fraudulent checks was a violation of law, and didn't know whether the penalty was mentioned or not. That he heard Jackman say that it was a violation of the law to issue fraudulent checks and he didn't hear Jackman mention the sheriff.

Witness Lyman Jackman testified that after talking to Clarkson and his wife, that he saw Sam, and he said that Rebecca owned the land. That Mrs. Clarkson Mason called Rebecca, and that he said to her, "Do you know anything about the matter of Clarkson's having given checks without any money in the bank," and she said, "No"; then he said I told her he had, and that that was a violation of the law. Witness Jackman denied any threat of prosecution or imprisonment, and

denies saying the sheriff was outside with a warrant in his pocket.

The rule as to duress is thus expressed in 13 C. J. 402: "The rule as it now exists is that the question of duress is one of fact in the particular case, to be determined on consideration of the surrounding circumstances, such as age, sex, capacity, situation, and relation of the parties; and that duress may exist, whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist. The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will."

On page 404 of the same volume, after stating the general rule to be that an agreement cannot be avoided because the duress was imposed on a third person, it is stated that an exception to the general rule is where the subject of the duress is the wife, husband, parent, child or other near relative, and, in such cases, the fact that the threatened prosecution or imprisonment may be lawful does not affect the voidability of the contract, nor is actual guilt or innocence of the accused material. Many authorities are cited to sustain these general principles.

In *Bush* v. *Brown* (1875), 49 Ind. 573, 577, 19 Am. Rep. 695, the court states the rule to be that to give validity to a contract, the law requires the free assent of the party who is to become chargeable thereon, and it therefore avoids any promise extorted from him by terror or violence, whether on the part of the person

to whom the promise or obligation is made, or on that of his agent. The authority then announces three rules governing in such cases, to wit: (1) Where there is an arrest for improper purposes upon a valid process; (2) where there is an arrest for just cause but without lawful authority; or (3) where there is an arrest for a just cause, and under lawful authority, for an improper purpose, and the party executes an instrument or pays money to free himself from the arrest, he may avoid the instrument or recover back the money.

The case of *Ross* v. *Owen* (1908), 42 Ind. App. 137, 85 N. E. 129, involved an action on a contract which was obtained under a threat to institute proceedings for a receiver, and it was held that the contract was voidable because of the duress, the court quoting with approval from *Parmentier* v. *Pater* (1885), 13 Ore. 121, 126, 9 Pac. 59, 61, that: "Any course calculated to excite alarm, which is resorted to by one party in order to coerce another to do an act detrimental to his rights, and advantageous to the former, is unlawful; and I do not think the law should make any distinction between means that are adopted in order to secure such ends."

The court then states the rule to be that where the threats actually or may reasonably coerce the will of the party threatened, and the contract results from such coercion, there is duress. In this case, we have an old woman, unmarried, living in the same home with her brother, and his son. She is suddenly confronted with a criminal charge against her nephew, and informed that unless she executed the notes and mortgage here involved to take care of certain checks which the nephew had issued on banks in which he had no funds, he would be arrested, and that the sheriff was in waiting. Without opportunity to consult with anyone, and while under the fear of the arrest of her nephew, she executed the instruments involved. The trial court found that such

facts constituted duress and we see no reason to disturb the finding.

We are not impressed with appellant's contention that there was a ratification of her acts after she was from under the duress. There is evidence that she had made no payments on any of the notes, and that such payments had been made by her nephew of his own accord. There is evidence that, within a few days after the execution of the notes, appellee thanked one of the parties whose check had been redeemed for his kindness in saving the family from the disgrace, but this may well have been while appellee was still under the duress that had induced her to execute the papers, and it was certainly long before the statute of limitation had run against a prosecution for the alleged crime with which her nephew was charged.

This court sees no reason for reversal, and the judgment is therefore affirmed.