ATLAS SECURITIES COMPANY v. FERRELL ET UX.

[No. 13,370. Filed February 1, 1929.]

*Louis Rosenberg, Salem D. Clark* and *E. M. Hornaday,* for appellant.

*Dodson & Scifres,* for appellees.

NICHOLS, J.—Action in three paragraphs of complaint by appellees, for the cancellation of a certain note and the mortgage securing the same. Answer in denial. Judgment for appellees, cancelling the instruments. The errors assigned are the conclusions of law and overruling appellant's motion for a new trial.

It appears by the special findings that on July 2, 1926, and for some months prior thereto, and ever since, appellee Seaton Ferrell was the owner in fee simple of the real estate here involved. Appellee Sarah S. J., during all of said time was his wife and, as such wife, owned an inchoate interest therein. Appellees were during all said time engaged in farming and lived upon and tended said farm, and knew no other business than that of farming; and, on said date, and at the time of the visit of appellant, by its agents, as hereinafter appears, they were at home attending to the ordinary work on their farm; that appellant was, during all said time and yet is, engaged in buying negotiable instruments and conditional sales contracts and notes evidencing the payments due thereunder for automobiles sold at retail by automobile dealers, and in selling automobiles that come into its possession by virtue of repossession from purchasers thereof who have defaulted in the terms of the conditional sales contracts, and had its office and place of business in Indianapolis; that appellees' son, Benjamin Ferrell, was, on July 2, 1926, and a long time prior thereto and for about a month thereafter, engaged in the business of selling automobiles at retail and in repairing the same, operated a sales-room and repair shop in Lebanon, Indiana, and had in his possession and under his control automobiles, both new and used, to be sold and offered for

sale to customers and prospective customers at retail in the ordinary course of business; that he had little or no capital, and his manner of doing business was to purchase automobiles from original dealers by paying about fifteen per cent. down and then give a conditional sales note for the balance of the purchase money, with the agreement that the title should remain in such dealer until payment in full; he was then permitted to remove the automobile to his place of business in Lebanon, and sell the same as a retail dealer, and, when so sold, he was to pay the balance due under his said contract. When such automobile was sold, he would have the purchaser issue to him a note for the unpaid balance of the purchase price and a conditional sales contract, in which he retained the title to said property until it was paid in full; that when he obtained such note and contract, he would sell and assign the same to appellant, or appellant would advance him money and take as security therefor the assignment of such notes and contract; that the said Benjamin Ferrell did not long so do business with appellant until he became dishonest, and procured persons to sign notes and contracts of sale when, in fact, the persons so signing said notes and contracts were worthless, and had made no purchase whatever, and no such automobiles as were described in such contracts and notes were sold, and no sale of any kind had been made, and such notes and contracts did not represent any sale whatever; that he would take said notes and contracts to appellant and represent that they represented *bona fide* sales, and, through fraud and false pretense, would obtain money from appellant, and in this way he committed many crimes in his said dealings with appellant, and through such criminal acts obtained a considerable amount of money from appellant; that appellant dealt with said Benjamin Ferrell in good faith and believed

that his said notes and contracts represented *bona fide* sales of automobiles until it discovered said fraud a few days prior to July 1, 1926, when it immediately called him to its place of business, and demanded settlement and that he pay it all that he owed it or that he secure the same. They both knew and understood that he, said Ferrell, could be prosecuted criminally for what he had done, and appellant, at said time, let him understand that if he did not pay or settle the amount which he owed it, he would be criminally prosecuted; that said Ferrell told appellant that he could not pay it and that he had nothing whereby he could secure it; that it was then suggested that he might get appellee, his father, to pay said amount or secure the same, and that appellant's general manager and its attorney, together with the son, immediately proceeded to the home of appellees, all riding in the same automobile, which belonged to appellant or to one of its agents; that the son went into the house and talked to appellee, his father, alone, then his father came with him to the automobile and, after said Ferrell had introduced his father, they all went into the house to see the mother, and, while so in the house, the note and mortgage in question were prepared and executed under the circumstances as hereinafter set out.

Up to the time of said visit to the home of appellees, on July 2, 1926, they did not know that their son was in trouble of any kind, and did not know that he was indebted to said appellant in any sum whatever, did not know that he had in any way cheated or defrauded appellant, and did not know that he had committed or was accused of committing any crimes in his dealings with appellant, but they believed and understood that everything was all right with him, that he was fairly prosperous and that he was in every way honest; that upon said visit appellees were informed of their son's indebtedness to appellant, of his conduct and dealings with it, of his

fraudulent and dishonest practices and conduct, of the crimes committed by him, of his plight, that he could be prosecuted criminally for his practices and fraudulent conduct, and could be sent to the penitentiary; that appellant, at said time, informed appellees that unless said indebtedness, which amounted to $3,491, as was believed at that time, was paid or secured, their son would be prosecuted and sent to the penitentiary for his crimes so committed by him in his dealings with it; that appellees informed appellant that they could not pay said amount as they did not have any money, and could not obtain any; that appellant then suggested, by its said agent, that they secure the same by giving their note for $3,491, and give a mortgage upon their said farm to secure the same; that appellees thereupon objected to so doing and informed said appellant that they did not want to do so, that they were afraid they could not pay the note when it came due, that they had an invalid daughter to support, and that they were afraid they would lose their said farm if they executed said mortgage; that thereupon, said appellant, by its said agents, informed said appellees that, unless they did execute the said note and mortgage, it would prosecute their son and send him to the penitentiary; that appellees thereupon responded that they would do anything to save their son, and thereupon the note and mortgage involved were executed; that appellees would not have executed the said note and mortgage simply to assist their said son in his business or to secure and pay his indebtedness, but they did so because they believed that if they did not do so, appellant would cause him to be sent to the penitentiary, and whilst no express promise was made by appellant or its agents, that their said son would not be prosecuted and sent to the penitentiary if they did execute said note and mortgage, they understood and believed from what appellant's agents said to them that

the execution of said note and mortgage would save their son from being prosecuted and sent to the penitentiary, and this was the sole consideration which induced them to execute the same; that said appellant has at no time caused or attempted to have or cause said son in any way to be prosecuted for his crimes and has in no way attempted to have him sent to the penitentiary, but has at all times kept perfect faith with what they agreed to do; that the said son, however, had committed like crimes with other persons and corporations, of which appellant and appellees were wholly ignorant at the time of the execution of said note and mortgage, and, within a few days after the said note was executed, he was arrested on some of the other crimes so committed by him, was convicted and sent to the penitentiary. Appellant had no desire to prosecute said son or to cause him to be prosecuted and sent to the penitentiary if their said debt was paid or secured, and the sole purpose which appellees had in executing said note and mortgage was to save their said son from such prosecution and from being sent to the penitentiary.

On these findings, the court stated as conclusions of law that the law is with appellees; that the note and mortgage in question were executed for an illegal and invalid consideration, without any valuable consideration whatever, and under duress, and should be set aside, cancelled and annulled, and appellees should recover their cost.

Appellant complains that the special findings contain evidentiary facts and that there are conclusions of law in such findings. It is often difficult to distinguish between evidentiary facts and ultimate facts, and between ultimate facts and conclusions of law. Eliminating from the findings the evidentiary facts of which appellant complains, and the conclusions which it contends are of law and not of facts, the findings are still sufficient upon

which to base conclusions of law. There is no substantial dispute as to the facts in evidence upon which the findings are based.

Of the six conclusions of law, appellant has challenged the second and third only. We may disregard these conclusions and base a valid judgment upon other conclusions. *Coburn* v. *Sands* (1897), 150 Ind. 141, 48 N. E. 786; *Slauter* v. *Favorite, Gdn.* (1886), 107 Ind. 291, 4 N. E. 880, 57 Am. Rep. 106; *Farmers, etc., Ins. Co.* v. *Hale* (1919), 69 Ind. App. 413, 122 N. E. 19; *Merchants Nat. Bank* v. *Delaware School Tp.* (1916), 185 Ind. 658, 114 N. E. 450. Had there been no other conclusion of law than that "the law is with plaintiff," this would have been sufficient upon which to base a valid judgment.

The facts herein, as appear by the findings, present a case analogous to that of *Huntington, etc., Bank, Trustee,* v. *Mason* (1926), 85 Ind. App. 320, 154 N. E. 20, and in that case judgment was rendered in favor of plaintiff cancelling a note and mortgage obtained under duress, and this court affirmed the judgment. We find no reversible error. Judgment affirmed.