[No. 3725.   Decided April 15, 1901.]

JOSEPH BLUMAUER *et al., Appellants,* v. RACHEL L.
CLOCK *et al., Respondents.*

CHATTEL MORTGAGES — PRIORITIES — CREDITORS — INCUMBRANCES.

Under Bal. Code, § 4558, which provides that "a mortgage of
personal property is void as against creditors of the mortgagor,
or subsequent purchasers and incumbrances of the property for
value and in good faith, unless it is accompanied by the affi-
davit of the mortgagor that it is made in good faith, and
without any design to hinder, delay, or defraud creditors, and
it is acknowledged and recorded," one performing labor for the
mortgagor with actual knowledge of the existence of an unre-
corded chattel mortgage is a creditor and entitled to priority over
the mortgagee, even though he may have filed a subsequent lien
against the property under the provisions of the employee's act
of 1897 (Laws 1897, p. 55), since the fact that lienors, who at
one time were, creditors, have seen fit to accept the benefit of the
law in relation to the enforcement of their claims does not take
them out of the category of creditors and place them in that of
incumbrancers; the statute contemplating by the term "incum-
brancers," those who acquire that position by means of con-
tractual relations and not by operation of law.

EMPLOYEES' LIENS — CLAIM FOR LABOR OF OTHERS.

One who has a contract with an employer to do certain labor
for him is not deprived of the right of lien given by Laws 1897,
p. 55, to employees, from the fact that he hired help to assist
in the performance of the labor, paying therefor at his own
expense, when such hired labor in no wise changed the contract
price or the relations between the employer and the lienor.

PARTIES — INFANCY — WAIVER OF OBJECTION.

The objection that parties to an action are minors, who ap-
pear without guardians *ad litem,* cannot be raised by the ad-
verse party after pleading to the merits.

Appeal from Superior Court, Thurston County.—Hon.
OLIVER V. LINN, Judge. Affirmed.

*Troy & Falknor,* for appellants.

*John R. Mitchell, Phil. Skillman* and *J. W. Robinson,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is an action on the part of the appel· lants to foreclose a mortgage upon both real and personal property. The appeal herein involves the rights of appel- lants and respondents to the personal property described in appellants' mortgage. The personal property is de- scribed as the building used as a shingle mill,. together with the machinery specifically described, the same being situate on leased land in the town of Bucoda, Thurston county, state of Washington. The appellants' mortgage was executed by Rachel L. Clock and others, on the 14th day of November, 1896, for the sum of $2,557.24, and there is now due and owing upon the same $2,269.94, with interest and attorney's fees. The mortgage was recorded in the auditor's office of Thurston county upon the 18th day of November, 1896, but the mortgage did not contain the affidavit of good faith, and was recorded as a real estate mortgage. The respondents, excepting the mortgagors, were employed in said mill described in the mortgage, which mill was being operated by a firm known as Clock & Sanford, and they performed work and labor and furnished material to said Clock & Sanford in the operation of said mill, for which they filed logger's liens upon the lumber and shingles at the mill, and also what are known as "employees' liens" upon said mill, under the law of 1897. These respondents were brought into the action. To the answer of respondent lienors the appellants replied, alleging actual knowledge of the ap- pellants' mortgage. The court found that certain of the respondents, towit: J. M. and M. J. Davies, Henry Rich- ards, Ed. Enderland (who assigned his claim to Henry

Richards), Peter Anderson, Louis Hagoes, Sam. Souther-
land, A. Perry, Tony Cales, and Charles Whalen, and
each of them, had, at and prior to the doing of the work
for which they claimed their liens, actual knowledge and
notice of appellants' mortgage, but also found that all of
the respondents' claims were superior to those of the appel-
lants, the mortgagees.

The first assignment of error is that the court erred in
holding the employee's act of 1897 constitutional. This
question is eliminated from the case by the opinion of this
court in *Fitch v. Applegate, ante,* p. 25 (64 Pac. 147).

It is also alleged that the court erred in its conclusion
of law that the respondents' liens were superior upon the
property, after finding that the respondents had actual
knowledge of appellants' unrecorded mortgage. The stat-
ute which is under construction here is § 4558, Bal. Code,
which is as follows:

"A mortgage of personal property is void as against
creditors of the mortgagor or subsequent purchaser, and
incumbrances of the property for value and in good faith,
unless it is accompanied by the affidavit of the mortgagor
that it is made in good faith, and without any design to
hinder, delay, or defraud creditors, and it is acknowledged
and recorded in the same manner as is required by law
in conveyance of real property."

There has been a controversy in this and other states
in relation to the construction of this statute, but this
court, in *Hinchman v. Point Defiance Ry. Co.,* 14 Wash.
349 (44 Pac. 867), placed a construction upon the stat-
ute which it has since followed. It was there said:

"We think the true interpretation to be given the sec-
tion requires the transposition of the comma appearing
after the word 'purchasers,' as found in said section, by
placing it after the word 'mortgagor,' making the section
read as follows: 'A mortgage of personal property is void
as against creditors of the mortgagor, or subsequent pur-

chasers and incumbrances of the property for value and in good faith.' . . . Manifestly," said the court, "there are three classes of persons whose rights are defined by this section. They are, (1) creditors of the mortgagor; (2) subsequent purchasers; and (3) parties in whose favor subsequent incumbrances of the property are made. As to the first class—creditors,—the unrecorded mortgage is absolutely void. It is void, also, as to the two latter classes when they deal with the mortgaged property for value and in good faith. Subsequent purchasers and parties taking subsequent incumbrances upon the property are thus placed upon the same footing, and in all reasons why should they not be?"

It is insisted by the appellants that the lienors are subsequent incumbrancers; that they are not creditors of the mortgagor; and that their actual knowledge of the existence of the mortgage exempts them from the benefit of the section; and the above case is quoted in support of that contention. But we are inclined to think that in the third classification, viz., parties in whose favor subsequent incumbrances of the property are made, the court did not have reference to parties in whose favor any incumbrances were made by operation of law, but to parties who took an incumbrance by virtue of a contract with the owner of the property, as a subsequent mortgagee, and incumbrances of that character. This view is sustained by the decision of this court in *Willamette Casket Co. v. Cross Undertaking Co.*, 12 Wash. 190 (40 Pac. 729), where, after quoting the statute, it was said:

"If the language used be given its ordinary significance, it would seem to fully warrant such contention. It is claimed, however, by the respondent that only such creditors are protected by the provisions of this section as before the time of the recording of the mortgage have obtained some specific lien upon the property. But such construction would do violence to the language used. The statute makes no distinction as to the creditors who are

to be protected, and we see no good reason for holding that one class rather than another was intended. One is as much a creditor before his claim has been made a specific lien upon certain property as after, and for that reason an unsecured creditor is as well described by the language of the section as one who had procured a specific lien as security for his claim. The intention of the legislature was to protect those who should give credit upon the faith of property owned by one to whom it was extended, and to give force to such intention the term 'creditors', as used in the act, must be held to cover all classes of creditors."

It is generally held that, where the statute does not restrict the word "creditor", the courts will not limit its application. A creditor and an incumbrancer may stand in a dual capacity; for an incumbrancer must, at least, be a creditor, although a creditor need not necessarily be an incumbrancer. It seems to us that the more reasonable and just construction of the law would be to construe the term "creditor" with reference to the inception of the obligation of the debtor, rather than to conditions which might afterwards arise. For instance, if the lienors in this case had not seen fit to file their liens, but had relied upon their employer for compensation, they would unquestionably have been creditors. Because they afterwards took advantage of the lien laws, the relative position to the employer ought not to be held to have been changed. It has even been held in *Dempsey v. Pforzheimer,* 86 Mich. 652 (49 N. W. 465, 13 L. R. A. 388), under a statute like ours, that where a creditor, who was entitled to the benefit of the statute, afterwards entered into a voluntary agreement with his debtor by which he took a mortgage upon the property that had been before that mortgaged, but which had not been properly recorded, his relation as creditor had not been changed. The syllabus of the case is that "a creditor who has the right to secure

a lien by legal process superior to that of a chattel mortgage then on file, because his debt was contracted while the mortgage was withheld from record, may obtain a like lien by the execution to him by the debtor of a chattel mortgage to secure the same indebtedness after the filing of the first mortgage." In that case, Harris & Karpp, partners in the jewelry business, borrowed $2,000 of one Borgess, and gave a chattel mortgage upon the goods to secure such indebtedness. This mortgage was not properly recorded. Afterwards a mortgage was given to respondent for a sum of money upon the same goods, the first mortgage not having been properly recorded. After holding that the mortgage was void for want of filing, as against the original indebtedness, the court said:

"If the defendants, before taking their mortgage, and after the filing of the Borgess mortgage, had proceeded against the property so mortgaged, and obtained by any process of law a lien upon it, or had they obtained judgment upon their claim, and issued execution, and levied on it, there can be no doubt but such lien or levy would have been good as against the Borgess mortgage. But it is claimed on behalf of plaintiff that because defendants took a mortgage to secure the indebtedness to them after the Borgess mortgage was put on file, and therefore had notice of it, they cannot now claim the benefit of the rule adopted by this court as shown above, and that they have no standing under the statute upon which the rule is founded. It is contended that, to avail themselves of the statute, the defendants, at the time of seizing the goods in question, must have the standing either of 'creditors of the mortgagors,' or of 'subsequent purchasers or mortgagees in good faith'; that they cannot claim as subsequent mortgagees in good faith, because they took their mortgage with full notice of the Borgess mortgage, which had then been on record for four days; and that the benefit of the statute cannot be invoked in favor of creditors, except by those who have a lien by process of law upon the property

in question; . . . But we can see no difference between a lien obtained by process and one gotten by consent of the owner through a chattel mortgage. If the defendants were entitled, as they undoubtedly were, to obtain a lien upon this property by legal process, and to hold it to the amount of such lien against the mortgage of Borgess, because the debt they were seeking to collect was contracted while this mortgage was withheld from record, we can see no reason in principle why they cannot hold the property under a lien obtained by chattel mortgage to secure the same indebtedness."

And so, in this case, the fact that the lienors, who at one time were creditors, have seen fit to accept the benefit of the law in relation to the collection of their claims, does not take them out of the category of creditors and place them in that of incumbrancers. If they should reduce their claims to a judgment and issue execution, and levy upon property of their employer, they would have an incumbrance upon the property; but it would not be argued for a moment that they would lose any rights by reason of the operation of the law in this respect, and it is by reason of the operation of the lien laws, and not by any contractual relations, that they have an incumbrance or lien upon the property of the employer. It cannot even be said that they originally intended to take advantage of the lien laws. Ordinarily, when a man works for another he expects to be paid for his labor without the expense, vexation, and delay attending the foreclosure of a lien, and he avails himself of the lien law as a last resort, if he avails himself of it at all. The lienor stands in an entirely different position from a person who originally contracts with reference to the security which he takes, and who would have no contractual relations with the debtor excepting for the security.

It is also insisted that these lienors are not creditors

of the mortgagor, for the reason that the mortgage was given, in the first place, by Rachel Clock and others, and that one Sanford has since obtained an interest in the operation of the mill. But we do not think this contention can be sustained in the face of the record. The finding of fact is to the effect that J. B. Clock, who was one of the original joint owners of the shingle mill property, at about the time he formed a partnership with Sanford for the purpose of operating the mill purchased all the interests of his joint owners in and to the said shingle mill property, and has all the time, during which the labor was performed, been the absolute owner of the mill property. It follows that Sanford has no interest that would in any way affect the lien on Clock's property.

The objection is raised that the lien claim of Egbert Martin comprises work that was done by his brother, and also included the claim of some hired men; and it is insisted that this claim cannot be sustained, under the doctrine announced in *Dexter Horton & Co. v. Sparkman,* 2 Wash. 165 (25 Pac. 1070), and *Campbell v. Sterling Mfg. Co.,* 11 Wash. 204 (39 Pac. 451). The court made the following finding in relation to Martin's lien:

"That all of said shingle bolts mentioned were cut by said Egbert Martin and his brother ———— Martin, equally and jointly, under agreement with said Clock & Sanford, and they were together entitled to the whole amount that was mentioned as due in said lien of Egbert Martin, but that said Egbert Martin, by mistake and honest error, and not intending to defraud any one, liened or included in his lien the whole amount, instead of the half of said amount, and that his lien should have been only for the amount of $73.52; that in cutting said bolts on the ranch of Davis, as aforesaid, said Egbert Martin and his brother employed at their own expense and paid for assistance of four others to the amount of $64.25, altogether, in the cutting of all said bolts, without any con-

tract on the part of said hired help to and with said Clock & Sanford, and the same did not in any manner change or modify the agreed price per cord for cutting of said bolts, namely 85 cents per cord."

The lien was cut down to the extent of the amount claimed and earned by the brother of Egbert Martin. It is true that in some of the earlier cases of this court, notably *Dexter Horton & Co. v. Sparkman, supra,* it was held that the lien given by statute was personal to the laborer, and when the laborer combined with his own claim the one assigned by another laborer he lost all right to take benefit of the foreclosure. But in that case the lien assigned was a distinct lien, and the lienor claimed for both balances in the gross sum. In addition to the fact that the court of later years has been inclined to construe the lien laws more liberally in favor of lienors, in this case the lienor, Martin, had a contract for hauling all these shingles, and in no event could the labor employed change the contract price or change the relations between the employer and the lienor, and the case falls within the rule announced by this court in *Hopkins v. Jamieson-Dixon Mill Co.,* 11 Wash. 308 (39 Pac. 815), where was sustained a lien that was partly for labor furnished as distinguished from labor performed.

The lien of Charles Whalen falls squarely within the rule announced above, and the same may be said of the liens of James M. and Morgan J. Davies; the finding being that a certain sum was due for labor under the contract contained in the lien.

As to the objection to liens of Ray Clock and Tony Cales, on the grounds that they were minors, it is sufficient to say that the objection, not being raised until the trial of the case, came too late; and "when an infant, without the intervention of a guardian or next friend,

undertakes to prosecute his suit in his own name, the debtor has a right to object to his recovery, because the judgment, like the contract, may be repudiated, or affirmed and enforced at the election of the infant, if rendered before his majority. . . . But such objection must be interposed in apt time" by plea in abatement or by answer "before the trial on the merits, and if not so pleaded it will be considered as waived." *Hicks v. Beam,* 112 N. C. 642 (17 S. E. 490, 34 Am. St. Rep. 521).

"After pleading to the merits the objection cannot be raised, for the defendant is deemed to have thereby admitted that the plaintiff is *rectus in curia.*" 14 Enc. Pl. & Pr., 1019, and cases cited.

The judgment is in all respects affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT and HADLEY, JJ., concur.

WHITE, J. If called upon to interpret, as an original construction, § 4558, Bal. Code, I could not concur in this opinion. Inasmuch, however, as this court has held that a mortgage of personal property, unless executed and recorded in the manner provided by law, is void, as against creditors, with or without notice, I concur; for I think the mere fact that one avails himself of a lien given to him by law does not constitute him a mere incumbrance.