[No. 11219. Department Two. February 16, 1914.]

BEN SMITH, *Respondent*, v. W. M. ALLEN, *Appellant*.[1]

ACKNOWLEDGMENT — PROOF — ORAL EVIDENCE. An acknowledgment cannot be proved by parol, but only by the certificate of the officer.

CHATTEL MORTGAGES—ACKNOWLEDGMENT—NECESSITY. A chattel mortgage, without any certificate of acknowledgment by an officer authorized to take acknowledgments, is void as against creditors or incumbrancers for value and in good faith, under the express provisions of Rem. & Bal. Code, § 3660.

SAME—PRIORITY—"CREDITORS" AND "INCUMBRANCERS"—STATUTES—CONSTRUCTION. A creditor who takes a valid chattel mortgage to secure his antecedent debt, with notice of a prior unacknowledged chattel mortgage given to secure another creditor, is .both a creditor and an incumbrancer for value and in good faith, within Rem. & Bal. Code, § 3660, providing that a chattel mortgage without acknowledgment is void as to creditors, subsequent purchasers, and incumbrancers for value and in good faith; and his mortgage is therefore superior to the prior unacknowledged mortgage.

[1]Reported in 138 Pac. 683.

Appeal from a judgment of the superior court for Okanogan county, Pendergast, J., entered October 4, 1912, upon findings in favor of the plaintiff, in an action to foreclose chattel mortgages and establish their priority. Reversed.

*Peter McPherson*, for appellant.

*Smith & Gresham*, for respondent.

PARKER, J.—The plaintiff, Ben Smith, and the defendant, W. M. Allen, are each seeking to foreclose against the other, and against Dodge Brothers, two separate chattel mortgages which were given by Dodge Brothers upon furniture, used in connection with their restaurant business, in the town of Brewster, in Okanogan county, to Smith and Allen, respectively. The controversy has to do with the superiority of the respective rights of Smith and Allen under the mortgages. The trial resulted in foreclosure of both mortgages against Dodge Brothers, the decreeing of Smith's mortgage to be superior to Allen's, and decreeing that the proceeds of the sale of the property be applied accordingly. The proceeds of the sale being insufficient to satisfy both mortgages, Allen's mortgage was thus left unsatisfied. From this disposition of the cause, Allen has appealed.

The facts which we regard as controlling the respective rights of Smith and Allen, as between themselves, are not in dispute. On September 1, 1910, Dodge Brothers, being indebted to Smith in the sum of $1,500, executed and delivered to him, as evidence thereof, three promissory notes. At the same time, they signed and delivered to him a chattel mortgage purporting to be given to secure these notes. This mortgage had then attached to it an affidavit of good faith in usual form, as required by section 3660, Rem. & Bal. Code (P. C. 349 § 3) ; but there was not attached thereto any certificate of acknowledgment of its execution before an officer authorized to take acknowledgments in accordance with that section. On September 8, 1910, this mortgage was filed and recorded in the office of the auditor of Okanogan county.

On December 27, 1910, Dodge Brothers executed and delivered to Allen their promissory note for the sum of $278, to evidence an indebtedness then owing by him to them. This was a preexisting indebtedness, all of which had been incurred when there was no thought of security in connection therewith. On the day of the execution of this note, Dodge Brothers executed and delivered to Allen a chattel mortgage upon the same property which they had previously mortgaged to Smith. This mortgage to Allen was duly filed and recorded in the office of the auditor of Okanogan county on December 28, 1910. Attached to this mortgage, was an affidavit of good faith in proper form, and the acknowledgment of its execution was evidenced by proper certificate of a notary public endorsed thereon; its execution being in all respects strictly in compliance with the requirements of Rem. & Bal. Code, § 3660 (P. C. 349 § 3). We assume, for argument sake, that Allen had actual knowledge of the existence of Smith's mortgage.

On May 13, 1911, the debt secured by Allen's mortgage having matured and remaining unpaid, he commenced proceedings to foreclose the same by notice and sale, as provided by Rem. & Bal. Code, §§ 1104-1109 (P. C. 349 §§ 11-21). To that end, on that date, he caused the sheriff of Okanogan county to seize and take possession of the property, as he was expressly authorized to do by the terms of his mortgage upon default in payment of the indebtedness secured thereby. On May 18, 1911, Smith commenced this action in the superior court for Okanogan county, causing Allen's foreclosure proceedings to be transferred to that court, as provided by Rem. & Bal. Code, § 1110 (P. C. 349 § 23). Pleadings were thereupon filed by Smith and Allen, praying foreclosure of their respective mortgages, each claiming, as against the other, to have the superior lien. Judgment and decree followed, as we have already stated.

There is no controversy here as to the validity and binding force of either of these mortgages, as between mortgagor and

mortgagee; nor is there any room for controversy as to the validity and binding force of Allen's mortgage, except as it may be rendered inferior and subject to Smith's mortgage, because of the priority of that mortgage in point of time, and actual knowledge thereof by Allen. The real question is: Was the execution and recording of Smith's mortgage such as to render it superior to Allen's mortgage, in the light of his knowledge of the existence of Smith's mortgage and the provisions of Rem. & Bal. Code, § 3660 (P. C. 349 § 3), which reads:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchaser, and encumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property."

That Smith's mortgage is void as against the rights of persons specified in this section as being protected, it seems to us needs no demonstration other than the express language of the section here applicable, to wit: "a mortgage of personal property is void as against (specified persons) unless . . . it is acknowledged . . ." Indeed, that Smith's mortgage is void as against such specified persons is not seriously controverted, except it is contended that the oral proof offered upon the trial showed that Smith's mortgage was, in fact, acknowledged by the mortgagors. Assuming that there was oral proof so showing, this would be of no avail to Smith, because the law is well settled that acknowledgments cannot be proven by oral testimony, but must be proven by the certificate of the officer before whom the acknowledgment of the execution of the instrument is made. *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 Pac. 108; *Forrester v. Reliable Transfer Co.,* 59 Wash. 86, 109 Pac. 312, Ann. Cas. 1912 A. 1093. We are of the opinion that Smith's mortgage is, in law, unacknowledged and therefore

void as against the rights of all who are within the protected class specified in Rem. & Bal. Code, § 3660 (P. C. 349 § 3). This brings us to the question: Is Allen within that class?

Let us first notice Allen's rights as a creditor of Dodge Brothers, putting aside, for the moment, the fact that he is also the holder of a mortgage securing his debt. That he is now and was, before the receiving of his mortgage, a *bona fide* creditor of Dodge Brothers, is not subject to serious dispute. The statute states that an unacknowledged mortgage "is void as against creditors of the mortgagor." These words are used without qualification. While, of course, the creditor must be a *bona fide* one, his good faith, so far as his knowledge of an existing unacknowledged mortgage is concerned, is of no consequence, since such a mortgage is no mortgage so far as his rights are concerned. He is entitled to so treat it and have the courts so regard it. In the early case of *Baxter v. Smith*, 2 Wash. Terr. 97, 4 Pac. 35, decided by the Territorial supreme court in 1882, dealing with the question of the superiority of the rights of an attaching creditor over those of the holder of a prior unrecorded mortgage made by a debtor, under this same statute, at p. 100, the court said:

"The claim under said mortgage must also be postponed to that of McCabe, unless the fact that he had actual notice of said mortgage had the effect to subject the attachment thereafter made by him to the claim thereunder. Did such notice have such an effect? The language of the statute, the construction of which must decide this question, is as follows: 'A mortgage of personal property is void as against creditors of the mortgagor, or subsequent purchasers or incumbrancers of the property for value and in good faith, unless . . . it is recorded as required by law.' And a fair interpretation thereof will lead to the conclusion that the legislature intended, therefore, to provide that, as to creditors, an unrecorded mortgage on personal property should be absolutely void."

The statute was enacted in 1879, and has remained unchanged to the present time. Laws of 1879, p. 104 (Rem.

& Bal. Code, § 3659 *et seq.*; P. C. 349 §§ 1-39). In *Willamette Casket Co. v. Cross Undertaking Co.*, 12 Wash. 190, 40 Pac. 729, it was held that a creditor was protected as against an unrecorded mortgage even though he had not obtained any lien upon the property before the recording of the mortgage, though in that case, the creditor appears to have become such without actual notice of the existing mortgage. In *Hinchman v. Point Defiance R. Co.*, 14 Wash. 349, 44 Pac. 867, referring to this statute, the court said:

"Manifestly, there are three classes of persons whose rights are defined by this section. They are, (1) creditors of the mortgagor; (2) subsequent purchasers, and (3) parties in whose favor subsequent incumbrances of the property are made. As to the first class—creditors,—the unrecorded mortgage is absolutely void."

Some remarks were made in that case and in *Roy & Co. v. Scott, Hartley & Co.*, 11 Wash. 399, 39 Pac. 679, which might seem to indicate that the court entertained the view that creditors with actual notice of prior unrecorded or otherwise defective mortgages acquire their rights subject to such mortgage. But in these cases, as well as others which we will hereafter notice, the right of the subsequent incumbrancer was being considered only as an incumbrancer, apparently irrespective of his superior rights as a creditor. In the later case of *Blumauer v. Clock*, 24 Wash. 596, 64 Pac. 844, 85 Am. St. 966, the creditors whose claims were involved had actual notice at the time of becoming such creditors of the existence of a prior unrecorded mortgage which was defective for want of an affidavit of good faith as required by § 3660. Notwithstanding such actual notice, and notwithstanding the creditors became such thereafter, their rights were held superior to the mortgage, upon the ground that the statute, by express terms, rendered such mortgage absolutely void as to creditors. It may be here noticed that the logic of that decision, also, is that the word "creditors," as used in the statutes, means all creditors becoming such both before and

after the giving of the mortgage, which, failing to comply with the statute, is rendered void. The supreme court of South Dakota, in *Pierson v. Hickey*, 16 S. D. 46, 91 N. W. 339, expressly so held under a statute in substance the same as ours. We therefore have given no attention to the question of when Allen became a creditor of Dodge Brothers. Under our recent decision in *Pacific Coast Biscuit Co. v. Perry*, 77 Wash. 352, 137 Pac. 483, had Smith procured a proper affidavit of good faith as to his mortgage, and then caused it to be recorded before Allen's mortgage was recorded, there would be some ground for contending that Smith's mortgage is superior to Allen's. But Smith's mortgage has not, even to this day, been cured by any affidavit of good faith. It is still absolutely void for that reason as against Dodge Brothers' creditors, and therefore void as against Allen.

No decisions have come to our notice dealing with unacknowledged chattel mortgages in connection with the rights of the creditors; but of course the want of acknowledgment has, by the express language of the statute, the same effect as the want of an affidavit of good faith, or the want of recording. These latter deficiencies rendering the mortgage void as to creditors, under the decisions we have noticed, it necessarily follows that want of acknowledgment has the same effect. We have so far confined our inquiry to the rights of Allen as against Smith's mortgage, only in the light of the fact that he is a creditor of Dodge Brothers. As such, it seems plain to us that his rights are superior to any claim Smith may make under his mortgage. Whether Allen's rights as a mere creditor are superior to Smith's rights as a mere creditor is quite another question. It may be conceded in all we shall now say that their rights as mere creditors are equal. As we proceed, however, we think it will develop that the superiority of their respective ultimate rights will be found to depend upon who first acquired, as

against the other, a. valid lien upon the property of Dodge
Brothers to secure the payment of his claim.

What, let us, now inquire, are the rights of Allen as a
mortgagee of Dodge Brothers, the mortgage being given to
secure the very antecedent debt which made him a creditor
of Dodge Brothers? Is it possible that, by taking such mort-
gage and thus acquiring a lien upon the property of Dodge
Brothers, all of his superior rights as a creditor of Dodge
Brothers are gone? We may assume that he thereby became
an incumbrancer with notice of Smith's prior mortgage, but
we are not to lose sight of the fact that that mortgage was
void as to him as a creditor of Dodge Brothers. Did the
taking of the mortgage by Allen infuse life into the mort-
gage of Smith so as to render it superior to Allen's mort-
gage, given to secure his claim as to which Smith's mort-
gage was void? To so hold would be to say that Allen must
not acquire any lien against the property of Dodge Brothers,
for to do so would make him a subsequent incumbrancer not
"for value and in good faith," and thus render his prior
superior rights as a creditor of no avail, because of his notice
of the existence of Smith's prior void mortgage. It seems
to us this cannot be, but that the taking of this mortgage by
Allen as security for the payment of his preexisting claim as
a creditor of Dodge Brothers, which was superior to Smith's
mortgage, constituted Allen an incumbrancer "for value and
in good faith," within the meaning of these words as used in
the statute. Let us remember that Allen became a creditor
of Dodge Brothers long before he took the mortgage from
them to secure his claim, and at a time when no mortgage
or security was contemplated to be taken to secure his claim.
Had the creation of the relation of debtor and creditor and
the taking of his mortgage as security been a single trans-
action, it is possible that Allen might have become a subse-
quent incumbrancer so. as to render his rights subject to
Smith's mortgage, in view of his knowledge of that mortgage;
since then it might be said he had no preexisting superior

rights as a creditor. This, however, is not the question here. In *Blumauer v. Clock*, 24 Wash. 596, 64 Pac. 844, 85 Am. St. 966, which we have already noticed, where the creditors secured their claim by filing statutory liens upon the property covered by a prior mortgage not having an affidavit of good faith attached thereto, of which mortgage they had notice, Justice Dunbar, speaking for the court said, at pages 600 and 602:

"A creditor and an incumbrancer may stand in a dual capacity; for an incumbrancer must, at least, be a creditor, although a creditor need not necessarily be an incumbrancer. It seems to us that the more reasonable and just construction of the law would be to construe the term 'creditor' with reference to the inception of the obligation of the debtor, rather than to conditions which might afterwards arise. For instance, if the lienors in this case had not seen fit to file their liens, but had relied upon their employer for compensation, they would unquestionably have been creditors. Because they afterwards took advantage of the lien laws, the relative position to the employer ought not to be held to have been changed. It has even been held in *Dempsey v. Pforzheimer*, 86 Mich. 652 (49 N. W. 465, 13 L. R. A. 388), under a statute like ours, that where a creditor, who was entitled to the benefit of the statute, afterwards entered into a voluntary agreement with his debtor by which he took a mortgage upon the property that had been before that mortgaged, but which had not been properly recorded, his relation as creditor had not been changed    .   .   .

"And so, in this case, the fact that the lienors, who at one time were creditors, have seen fit to accept the benefit of the law in relation to the collection of their claims, does not take them out of the category of creditors and place them in that of incumbrancers. If they should reduce their claims to a judgment and issue execution, and levy upon the property of their employer, they would have an incumbrance upon the property; but it would not be argued for a moment that they would lose any rights by reason of the operation of the law in this respect, and it is by reason of the operation of the lien laws, and not by any contractual relations, that they have an incumbrance or lien upon the property of the employer. It cannot even be said that they originally intended

to take advantage of the lien laws. Ordinarily, when a man works for another he expects to be paid for his labor without the expense, vexation, and delay attending the foreclosure of a lien, and he avails himself of the lien law as a last resort, if he avails himself of it at all. The lienor stands in an entirely different position from a person who originally contracts with reference to the security which he takes, and who would have no contractual relations with the debtor excepting for the security."

The logic of these remarks, it seems to us, necessarily leads to the conclusion that the result must have been the same if the lien securing the preexisting debt had been in the form of a mortgage instead of the filing of a statutory lien; and this brings us to the point where it becomes plain that, while the rights of Smith and Allen may be equal as mere creditors, Allen has been the first to acquire a valid lien upon the property as between him and Smith. Some remarks have been made in the former decisions which we have noticed, and also in *Chase v. Tacoma Box Co.*, 11 Wash. 377, 39 Pac. 639, and *Mendenhall v. Kratz*, 14 Wash. 453, 44 Pac. 872, which may seem not wholly in harmony with the views expressed by Justice Dunbar in the later case of *Blumauer v. Clock*, but a critical reading of these cases, we think, will readily show that in none of them were the superior rights of creditors as such in connection with their rights as lienors seriously considered. Indeed, that problem seems not to have been squarely presented or seriously considered by this court until the decision in *Blumauer v. Clock*, wherein Justice Dunbar so logically disposes of it. We are of the opinion that, while Smith and Allen have equal rights as mere creditors of Dodge Brothers, their ultimate respective superior rights are determinable by the priority of the lien either may acquire, securing his claim; and that it is immaterial what the nature of that lien may be, so long as it is such as is recognized by law, whether statutory or contractual. It follows that the lien evidenced by Allen's mortgage is superior to that evidenced by Smith's mortgage.

Views somewhat in harmony with the conclusions we here reach are expressed in *Johnston v. Wood*, 19 Wash. 441, 53 Pac. 707, and *Worley v. Metropolitan Motor Car Co.*, 72 Wash. 243, 130 Pac. 107, though those cases involved conditional sale contracts and are not exactly in point.

We have not lost sight of the general equitable rule that the pledging of property as security for an antecedent debt is not regarded as such a *bona fide* pledge for value as will defeat the rights of those interested in the property of which the pledgee has no notice. This, upon the theory that the creditor receiving such pledge parts with no value and surrenders no right, as recognized and applied by this court in *McDonald & Co. v. Johns*, 62 Wash. 521, 114 Pac. 175, 33 L. R. A. (N. S.) 57, as well as in other decisions which might be noticed. But we are here dealing with rights which are defined and measured by express legislative enactment; and since we find therein a perfect guide to the solution of the problem before us, we are not permitted to look beyond the statute for aid in the general rules of law or equity.

We conclude that Allen's mortgage must be held superior to Smith's mortgage, and that the trial court erred in holding otherwise. The judgment and decree is reversed, in so far as it directs application of the proceeds of the foreclosure sale to be made first in the payment of Smith's mortgage and his costs in this action. The cause is remanded to the superior court with directions to decree Allen's mortgage to be superior to Smith's mortgage, and to take such further necessary proceedings in the completion of the foreclosure as are consistent with the views we have here expressed.

CROW, C. J., MOUNT, FULLERTON, and MORRIS, JJ., concur.