[No. 13357. Department Two. August 14, 1916.]

S. KATO, *Respondent*, v. UNION OIL COMPANY OF CALIFORNIA, *Appellant*.[1]

CHATTEL MORTGAGES—BILL OF SALE AS MORTGAGE—AFFIDAVIT OF GOOD FAITH—NECESSITY. Bills of sale, intended as chattel mortgages, must be accompanied by the affidavit of good faith required of chattel mortgages by Rem. & Bal. Code, § 3660.

SAME—AFFIDAVIT OF GOOD FAITH—PRIORITY—EXECUTION LIEN. A chattel mortgage not accompanied by an affidavit of good faith is inferior to the lien of a subsequent execution levy against the mortgagor, where the mortgagee had not perfected his lien by taking possession or by foreclosure, under Rem. & Bal. Code, §3660, declaring such a mortgage void as to creditors of the mortgagee, subsequent purchaser or incumbrancers in good faith.

SAME—PRIORITY — PERFECTING LIEN — COMMENCEMENT OF ACTION. Where no receiver was appointed and no actual possession taken of mortgaged chattels, left in the hands of the mortgagor, the commencement of an action to foreclose the mortgage is not such a taking of possession as to perfect the lien of a defective mortgage not accompanied by an affidavit of good faith, as against a subsequent execution levy.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 19, 1915, upon findings in favor of the plaintiff, in an action of claim and delivery, tried to the court. Reversed.

*S. G. Climenson*, for appellant.

*Robert D. Hamlin*, for respondent.

PARKER, J.—This is a proceeding under our statute relating to adverse claims to property levied upon, in which S. Kato claims ownership and right to the possession of two automobile trucks, levied upon and taken possession of by the sheriff of King county under an execution issued upon a judgment of the superior court for that county in favor of the Union Oil Company against the Panama Auto Transfer,

[1]Reported in 159 Pac. 692.

Incorporated. Kato obtained possession of the trucks from the sheriff upon making affidavit of ownership and his right to possession thereof and furnishing a bond for their re-delivery to the sheriff, as provided by Rem. & Bal. Code, § 573. Trial in the superior court without a jury resulted in findings and judgment in favor of Kato, from which the Union Oil Company has appealed to this court.

On October 26, 1914, the Panama Auto Transfer, Incor-porated, executed and delivered to N. Yoshida a bill of sale purporting to convey to him the two automobile trucks here involved. This bill of sale was recorded on the same day in the office of the auditor of King county. On December 19, 1914, Yoshida executed and delivered to S. Masui a bill of sale purporting to convey to him the two trucks, which bill of sale was on the following day duly recorded in the office of the auditor of King county. The first as well as the second of these bills of sale was executed for the benefit of Masui, as security for the payment to him of an indebtedness then due to him from the transfer company, and also as security for future advances to be made by him to the trans-fer company. These bills of sale were absolute in form. Neither of them was accompanied by any affidavit of good faith, as required by Rem. & Bal. Code, § 3660, relating to the execution of chattel mortgages. The possession of the trucks remained in the transfer company.

On March 20, 1915, Masui commenced an action in the superior court for King county seeking foreclosure of these bills of sale as a chattel mortgage, alleging them to have been intended as such, by all parties concerned, to secure in-debtedness to him from the transfer company, and that there was due him upon such indebtedness, at the time of commenc-ing that action, the sum of $5,872, being the aggregate of several sums loaned and advanced by him to the transfer company at different times during the period from May, 1913, to March, 1915. In his complaint in that foreclosure action, in addition to his prayer for decree of foreclosure of

these bills of sale as a chattel mortgage, he also prayed for the appointment of a receiver to take charge of the trucks, and also for an injunction restraining the transfer company from disposing of them. There was, however, no receiver appointed, nor was any injunction or restraining order issued in that action nor, as we view the evidence, were the trucks ever taken possession of by Masui or any one else in his behalf until they were taken from the sheriff by Kato (successor in interest to Masui as we shall presently see) by his making the affidavit and furnishing the redelivery bond in this proceeding.

On March 26, 1915, there was duly rendered in the superior court for King county a judgment in favor of the Union Oil Company against the Panama Auto Transfer, Incorporated, for the sum of $443.75, upon which judgment, on June 3, 1915, execution was issued under which the levy and seizure of the two trucks was made by the sheriff. This seizure of the trucks by the sheriff was, as we view the evidence, a taking of them from the possession of the transfer company. On June 10, 1915, Masui executed and delivered to respondent, S. Kato, a bill of sale purporting to convey to him the two trucks here involved. This bill of sale, it seems plain, operated only as placing Kato in the shoes of Masui, Kato thereby becoming the assignee of whatever mortgage interest in the trucks was possessed by Masui. Such was manifestly the view of this bill of sale entertained by the trial court. On June 10, 1915, the sheriff delivered the trucks to Kato upon his making the affidavit of ownership and furnishing the bond in his initiation of this proceeding to try the question of his ownership and right to the possession of the trucks as against the sheriff and the execution lien of the oil company. On October 22, 1915, decree of foreclosure was duly entered in the action of Masui against the transfer company, foreclosing the bills of sale as a chattel mortgage.

The interest to which Kato succeeded by virtue of the bill of sale which Masui made to him on June 12, 1913, seems not to have been noticed in the decree of foreclosure. We may, however, assume that Kato succeeded to whatever rights Masui acquired by virtue of that decree. The oil company was not a party to that action. On November 6, 1915, the trial of this proceeding upon the merits was commenced, and on November 17, 1915, findings of fact, conclusions of law and judgment were duly made and rendered in this proceeding in favor of Kato and against the sheriff and the oil company, awarding to Kato a superior lien upon the two trucks by virtue of the foreclosure of the bills of sale as a chattel mortgage in the action of Masui against the transfer company—Kato having succeeded to the rights of Masui by virtue of the bill of sale executed to him by Masui pending the foreclosure action. The judgment so entered in favor of Kato and here upon review, so far as necessary for us to notice its terms, reads as follows:

"Ordered, adjudged and decreed that this cause be and the same is now hereby consolidated with that certain other cause No. 108,034, entitled S. Masui, plaintiff, against Panama Auto Transfer Inc., a corporation, defendant.

"It is further ordered, adjudged and decreed, that the plaintiff, S. Kato, within ten days after the entry of this judgment, deliver to the defendant, Robert T. Hodge, as sheriff of King county, Washington, that certain three ton Wilcox Auto Truck, License 31260, Motor No. 88, serial No. 1095, and also that certain three ton Rapid Auto Truck, License 31006, S. V. License 249, 1914, and that the said sheriff make sale of said personal property at the same time and place as he shall sell the personal property involved in the action consolidated herewith in cause No. 108,034, and that in default of the delivery of said auto trucks to the said sheriff within said ten days, that judgment be entered against the Maryland Casualty Company, a corporation, surety on the bond of said S. Kato, for the sum of $484, with costs and disbursements herein; that upon making delivery of said personal property and trucks to the said sheriff, the surety,

Maryland Casualty Company, a corporation, shall be released and discharged of and from any liability herein.

"It is further ordered, adjudged and decreed that the proceeds derived from the sale of the property herein directed to be returned to the sheriff shall be applied first upon the judgment in cause No. 108,034 [the foreclosure action of Masui v. Panama Auto Transfer, Inc.], and the balance, if any, applied upon the judgment in cause No. 107,531 [Union Oil Company v. Panama Auto Transfer, Inc.], and any excess remaining shall be paid to Panama Auto Transfer Inc., a corporation."

It seems plain to us, as it evidently did to the trial court, that respondent Kato, as the successor in interest to Masui, never became the legal owner of the title to the trucks in question, and in no event ever possessed any greater interest therein than that of a mortgagee, which is the only interest that Masui, his grantor, had or claimed to have in the trucks as against the transfer company. That this mortgage interest, as evidenced by the bills of sale, was valid as against the transfer company may, for the purpose of our discussion, be conceded. The real problem is, which of these two liens is superior: that of the chattel mortgage evidenced by the bills of sale, and the foreclosure thereof, under which Kato claims; or that of the levy made by the sheriff under the execution upon the judgment rendered against the transfer company in favor of the oil company, under which it claims. It is plain that the levy, by actual seizure of the trucks under this execution by the sheriff, created a valid lien in favor of the oil company, so far as the regularity of that judgment and the levy is concerned, and whether or not that lien is superior to the lien of the chattel mortgage and the decree of foreclosure thereof depends upon the answer to the question, Was that a valid chattel mortgage as against the oil company, the execution creditor of the transfer company?

We have seen that these bills of sale, though intended as a chattel mortgage, were not accompanied by any affidavit of

good faith as required by Rem. & Bal. Code, § 3660, relating to the execution of chattel mortgages, as follows:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchaser, and encumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property."

That the valid lien of a creditor against personal property of his debtor acquired upon a preexisting indebtedness, whether by judicial process or otherwise, is superior to a chattel mortgage executed by a debtor unaccompanied by the required affidavit of good faith, unacknowledged or unrecorded, is the settled law of this state. Such was our holding in *Smith v. Allen,* 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915 D. 300, where the subject was reviewed at length in the light of our previous decisions. On page 144 of the decision we said:

"We are of the opinion that, while Smith and Allen have equal rights as mere creditors of Dodge Brothers, their ultimate respective superior rights are determinable by the priority of the lien either may acquire, securing his claim; and that it is immaterial what the nature of that lien may be, so long as it is such as is recognized by law, whether statutory or contractual. It follows that the lien evidenced by Allen's mortgage is superior to that evidenced by Smith's mortgage."

In that case, Allen's mortgage was executed and recorded after Smith's mortgage, but was held superior because Smith's mortgage was *not acknowledged* as required by Rem. & Bal. Code, § 3660, and was, therefore, void as against Allen's rights as a mortgagee, his mortgage having been accompanied by an affidavit of good faith, *acknowledged* and recorded. While in that case Smith's mortgage was unacknowledged, and in this case Masui's mortgage is unaccompanied by an affidavit of good faith, the effect is mani-

festly the same, by the express words of § 3660 above quoted, as we pointed out at page 141 of our decision in the *Smith* case.

We have seen that the bills of sale were duly recorded as absolute bills of sale. But since it is plain that they were not bills of sale in fact, but were intended by all concerned as a chattel mortgage, we must now regard them as such and test the validity of the lien they created, as against the rights of the oil company, by the statutory requirement above quoted touching the execution of chattel mortgages. Viewed in this light, these bills of sale plainly did not meet this requirement, in that they were not accompanied by the required affidavit of good faith. In *Sayward v. Nunan*, 6 Wash. 87, 91, 32 Pac. 1022, Judge Scott, speaking for the court, observed:

"To hold that the affidavit and acknowledgment are not required where a bill of sale is given as security and is in effect a mortgage, would be to render such provisions of the law in relation to chattel mortgages nugatory, for the same could be avoided and fictitious claims created and spread upon the records by giving a mere bill of sale—a fraudulent device —instead of a mortgage. . . . If a bill of sale is given as security and is only in fact and effect a chattel mortgage it should be held to be within the provisions of the act relating to chattel mortgages."

These observations, it may be urged with some reason, did not relate to a controlling question in that case, and are largely dictum. However, we cannot escape the conclusion that they constitute a correct statement of the law. Manifestly, if the law were otherwise, the requirement as to the affidavit of good faith accompanying the execution of a chattel mortgage could be easily avoided and its purpose wholly defeated.

The trial court made no finding touching the question of the transfer company having parted with possession of the mortgaged property prior to its seizure by the sheriff under the execution. We have not merely assumed that the trans-

fer company did not, prior to that time, part with possession of the property, but we have reached that conclusion from a careful examination of all of the evidence. It would seem to follow that Kato, as the successor in interest of Masui, was not in the position of a mortgagee in possession when the sheriff seized the property, taking it from the possession of the transfer company. Had Masui or Kato actually taken possession, or had caused possession to be taken by some legal process before the execution levy, Kato might be held to have a superior lien as a mortgagee, under our decision in *Watson v. First National Bank*, 82 Wash. 65, 143 Pac. 451, and thus have avoided the necessity of an affidavit of good faith accompanying the execution of the bills of sale as a chattel mortgage, and rendered them effective as such as to creditors of the transfer company. The trial court, however, did conclude, as a matter of law, "that the interest of said Kato is that of a mortgagee in possession." This conclusion was apparently not rested upon the fact of actual possession by Masui or Kato at the time the sheriff seized the property under the execution, but seemingly is rested upon the theory that the commencement of the foreclosure action by Masui, before the seizure of the property under execution by the sheriff to satisfy the oil company's judgment against the transfer company, operated as an "equitable levy", as counsel for Kato terms it, upon the property, and had the effect of placing Kato in the position of a mortgagee in possession. The trouble with this theory, as we view it, is that no actual taking possession by Kato, or any one in his behalf, occurred in the foreclosure proceeding, nor was any receiver appointed or any process issued in that action authorizing the taking of possession of the property in Kato's behalf. Had there been any such taking possession of the property in the foreclosure proceeding before the levy of the execution by the sheriff, there would be good ground for arguing that Kato, as the successor of Masui, thereby became in effect a mortgagee in possession, or rather that his rights should be de-

termined upon that theory. The term "equitable levy" seems only to have reference to the bringing of property within the jurisdiction of a court of equity by a creditors' bill where equitable assets of the debtor are sought to be reached. 12 Cyc. 5; 15 Cyc. 1087.

We are unable to view the foreclosure action prosecuted by Masui in any such light. It was a plain foreclosure action, seeking to subject the mortgaged property, which was a legal and not a mere equitable asset of the transfer company, to the payment of its debt which the mortgage was given to secure. There was no lien upon this mortgaged property, as against the oil company, as long as the mortgage remained unaccompanied by an affidavit of good faith and the property remained in the possession of the transfer company, which condition continued until its actual seizure by the sheriff under the execution issued upon the judgment rendered against the transfer company in favor of the oil company. Manifestly, as between the lien rights of Kato, Masui's successor in interest, and the oil company, the lien of the latter became superior the moment the property was seized by the sheriff under the execution. We conclude that the oil company must be held to have acquired a first and superior lien as between it and Masui or Kato.

The judgment of the trial court is reversed in so far as it decrees the mortgage lien of Kato superior to that of the Union Oil Company under the levy made by the sheriff to satisfy its judgment against the transfer company. The cause is remanded to the superior court with directions to correct its judgment and decree accordingly, and for such further proceedings as may be necessary in harmony with the views herein expressed.

Respondent's motion to dismiss the appeal was disposed of by our decision in *Kato v. Union Oil Co.*, 91 Wash. 302, 157 Pac. 688.

MORRIS, C. J., HOLCOMB, and ELLIS, JJ., concur.