[No. 19976. Department One. January 6, 1927.]

First State Bank of LaCrosse, *Appellant*, v. McGregor Land & Live Stock Company, *Respondent*, Roy L. Jeremiah *et al.*, *Defendants*.[1]

[1] Chattel Mortgages (43)—Notice Affecting Priority—Actual Notice. Rem. Comp. Stat., § 3782, providing that the filing and indexing of a chattel mortgage shall cease to be notice, as against creditors and subsequent purchasers and mortgagees in good faith, after the maturity of the mortgage, unless, before the expiration of two years after the maturity, the mortgagee shall file an affidavit showing the amount due, has no application to a creditor and subsequent mortgagee who at all times had actual notice of the existence and record of the prior mortgage.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered December 31, 1925, in favor of the defendant in an action on promissory notes and to foreclose a chattel mortgage. Affirmed.

*H. J. Welty* and *Thomas Neill,* for appellant.

*Voorhees & Canfield,* for respondent.

Holcomb, J.—This is an action to foreclose a chattel mortgage on certain personal property, dated December 14, 1921, executed by Roy L. Jeremiah, J. W. Jeremiah, and Elmer R. Jeremiah to secure two promissory notes aggregating $7,256.79, both notes due October 1, 1922. Respondent was made a party defendant, and in its answer set up affirmatively that on November 1, 1920, defendants, the Jeremiahs, gave to respondent their promissory note for fourteen thousand dollars, dated November 1, 1920, due October 1, 1922, and on February 14, 1921, they executed and delivered to respondent a chattel mortgage to secure

[1]Reported in 251 Pac. 865.

their note on the same personal property described in the complaint in the chattel mortgage of appellant; that this chattel mortgage was filed February 21, 1921.

Paragraph 2 of the affirmative answer alleges:

"That the said mortgage was made, executed and delivered and recorded prior to the execution of the mortgages of the plaintiff, set out in the plaintiff's complaint, and that at, and prior to, the execution and delivery of each and every and all of the mortgages set out in plaintiff's complaint said plaintiff had actual knowledge and information of the execution and delivery of the said chattel mortgage hereinbefore set out and delivered to these answering defendants as aforesaid, and that the plaintiff's said mortgages and each of them were taken with full actual knowledge of the existence of the answering defendant's said mortgage."

It is pointed out by appellant that there is no allegation in the affirmative answer that any renewal affidavit had been filed by respondent.

Appellant demurred to the affirmative answer upon the ground that it did not state facts sufficient to constitute a defense as against appellant's mortgage. The demurrer was overruled.

Defendants, the Jeremiahs, appeared, pleaded that they had been adjudged bankrupt, and no judgment was taken against them.

Two errors are relied upon by appellant:

(1) That the court erred in overruling the demurrer to the affirmative answer; and

(2) Erred in its conclusion of law from the facts found, and in entering judgment decreeing the mortgage of respondent to be a first lien upon the property.

The material facts found by the trial court may be summarized as follows:

(1) That the note secured by the mortgage given to

respondent was dated November 1, 1920, and was due October 1, 1922.

(2)   That the note secured by appellant's mortgage was dated December 1, 1921, and due October 1, 1922, covering the same property as that described in respondent's mortgage.

(3)   That at the time appellant took its mortgage it knew of the existence of respondent's mortgage.

(4)   That respondent failed to file the renewal affidavit of its mortgage as provided by Rem. Comp. Stat., § 3782.

(5)   That by its conduct appellant led respondent to believe that appellant conceded the mortgage to respondent to be a valid, prior, and superior lien upon the chattels mortgaged.

[1]   As the question of law raised by the demurrer is the same as involved in the second assignment of error, appellant discusses them together, contending that the affirmative answer of respondent does not state facts sufficient to show that its mortgage is superior to that of appellant, and that the facts as found by the trial court do not support the conclusions of law and decree to the effect that the mortgage of respondent is a superior lien to that of appellant.

The trial court filed an able opinion in the case which, since there is no statement of facts brought here, we shall set out, as it refers to proofs in the cause which were considered by him, and which we have not before us. It is as follows:

"On November 1st, 1920, defendants Jeremiah executed and delivered to defendant McGregor Land & Live Stock Co. their note for $14,000, due October 1st, 1921, securing the same by chattel mortgage on personal property,—live stock, farming implements, etc., and a crop.

"On December 1, 1921, the same defendants executed and delivered to plaintiff their notes aggregating

$7,256.79, secured by chattel mortgage on the same property. Plaintiff had actual notice of the McGregor mortgage. Both mortgages were properly executed and filed with the county auditor. Defendant McGregor Land & Live Stock Co. failed to file a renewal affidavit as provided by Section 3782, Remington's Compiled Statutes.

"In this suit both mortgagees seek to foreclose their respective mortgages, each claiming priority.

"This case is somewhat unlike any other that has been before the supreme court and the specific question involved has not been definitely decided.

"By the provisions of sec. 3782, a mortgage properly filed and indexed *ceases to be notice* (by reason of such filing and indexing) as against creditors of a mortgagor and subsequent purchasers and mortgagees in good faith after it becomes due, unless within two years thereafter the renewal affidavit is filed. Sec. 3780, provides that a chattel mortgage is *void* as against the same class, unless accompanied by an affidavit of good faith.

"The provisions of the two sections are so vitally different that I can not see that a construction of Sec. 3780 materially assists in this case.

"The McGregor mortgage would have been valid as against plaintiff had it not been filed at all, because of plaintiff's actual knowledge of its existence. The filing merely gave constructive notice, a lower grade of notice than plaintiff had. And having actual notice the filing became unnecessary as to plaintiff. It necessarily follows, it seems to me, that the renewal affidavit would be immaterial, since its presence merely causes the filed mortgage to continue as constructive notice.

"If the McGregor mortgage is void as to plaintiff, it was void when plaintiff's mortgage was executed, since the McGregor mortgage was then due, no renewal affidavit was filed within two years and the voidability related back to its due date. And the court would be compelled to so find under plaintiff's theory. The legislature did not intend such a result, nor can a reasonable construction of the statute lead thereto.'

"Besides, under the testimony in this case, showing the relationship of the two mortgagees, it is difficult to find otherwise than that plaintiff can not avail itself of the McGregor's failure to file a renewal affidavit, if in fact such filing was unnecessary. As both parties agree, plaintiff had notice of the McGregor mortgage from the time of its execution.

"The parties began talking about the Jeremiah indebtedness, and at times the mortgage in question before it was executed, and continued their conversations besides a running correspondence until as late as February 26th, 1923. On July 25th, 1922, the McGregors paid some interest on plaintiff's demand against the Jeremiahs.

"On March 15th, 1921 (Defendant's Exhibit 3), mention is made by plaintiff of the McGregor mortgage, mention is also made in Exhibits 7, 8, 9, 10 and 11. On November 22nd, 1921 (Defendant's Exhibit 12), the McGregors write plaintiff in regard to renewing plaintiff's mortgages, which are forwarded on December 25th by the plaintiff (Defendant's Exhibit 13). These were returned on December 16th, 1921 (Defendant's Exhibit 14). On December 22nd 1921 (Defendant's Exhibit 15), after the execution of the plaintiff's mortgage and after the McGregor mortgage expired, if it did expire, plaintiff writes the McGregors asking for the payment of interest and listing the Jeremiah mortgages, including that here involved, No. 23344, and mentioning Jeremiahs' interest amounting to $337.16, which is apparently the McGregor check to plaintiff of July 25th, 1922 (Defendant's Exhibit 19). The same mention is also made in plaintiff's letter of December 30th, 1921, where a list of the McGregor mortgages since January 1, 1919, is enclosed and their release suggested (Defendant's Exhibit 16).

"On February 12th, 1923 (Defendant's Exhibit 22), the McGregors notified defendant (plaintiff) of having taken a new crop mortgage to secure their indebtedness involved in this suit, saying among other things: 'This is the same note which we have secured by mortgages on his outfit and his 1922 crop. This time we thought it unnecessary to draw up a new mortgage for the

outfit so we let the old one ride and presume you will do the same.' In this letter the McGregors offer to prepare mortgages for plaintiff to be signed by the Jeremiahs. On February 15th (Defendant's Exhibit 23), plaintiff replied enclosing mortgage blank and blank notes for the McGregors to have executed, saying nothing about the McGregor mortgage on the outfit.

"As above suggested, this correspondence, either directly mentioning the Jeremiah mortgages or using language referring to them, continues until February 26th, 1923 (Defendant's Exhibit 24).

"A reading of the exhibits and of the testimony in this case forces me to the conclusion that during all of the time, practically up to the commencement of the suit, plaintiff not only had actual notice of defendant's mortgage but acquiesced in its priority.

"Even if sec. 3728 is in effect a statute of limitation as suggested in the case of *Best v. Felger,* cited by plaintiff, a statute of limitation may be tolled, and here the acts and attitude of plaintiff would prohibit it from claiming priority.

"I think the mortgage of McGregor Land & Live Stock Company is superior to that of plaintiff. . . ."

It will be observed that the trial court had evidence before it that, at and prior to the execution of the chattel mortgage to appellant, it had actual knowledge and notice of the execution and priority of respondent's chattel mortgage, and that by its conduct appellant led respondent to believe that it conceded the mortgage of respondent to be a valid, prior and superior lien upon the mortgaged property.

Appellant contends that sections 3782 and 3783, Rem. Comp. Stat. [P. C. §§ 9761 and 9762] should be construed together. They read:

"Every mortgage filed and indexed in pursuance of this act shall be held and considered to be full and sufficient notice to all the world, of the existence and

conditions thereof, but shall cease to be notice, as against creditors of the mortgagors and subsequent purchasers and mortgagees in good faith after the expiration of the time such mortgage becomes due, unless before the expiration of two years after the time such mortgage becomes due, the mortgagee, his agent or attorney, shall make and file as aforesaid an affidavit setting forth the amount due upon the mortgage," etc.

"Sec. 3783. The effect of any such affidavit shall not continue beyond one year from the time when such mortgage would otherwise cease to be valid as against such creditors and subsequent purchasers and mortgagees in good faith; unless before the time when any such mortgage would otherwise cease to be valid, as aforesaid, a similar affidavit be filed and annexed as provided in the preceding section, and with like effect."

It is argued that the legislature itself construed § 3782 by the language of § 3783, that the mortgage ceased to be *valid* as against creditors and subsequent purchasers and mortgagees in good faith, if the renewal affidavit is not filed as required by § 3783.

In *Best v. Felger,* 77 Wash. 115, 137 Pac. 334, this court construed § 3782, *supra,* then § 3662, Rem. & Bal. Code, on which appellant chiefly relies. In that case it was said:

"Under our statute, the mortgage expires as to those subsequently acquiring rights upon the '*expiration of the time such mortgage becomes due*' in the absence of the filing of a renewal affidavit within two years *thereafter. . . .* Our statute recognizes the possible good faith of those acquiring rights after maturity of the prior mortgage, and before the expiration of two years thereafter. It seems to us that, in view of these provisions, a subsequent purchaser or mortgagee for value—and that, we think, is as far as his good faith need extend—may acquire rights subsequent to the *maturity* of a prior mortgage, subject only to the possibility of such prior mortgage being thereafter renewed by affidavit within two years after

its maturity. We are of the opinion that our statute is, in substance, a statute of limitations, in so far as the rights of purchasers and mortgagees who acquire rights in the property after the maturity of the first mortgage are concerned, and that as to such there can be no renewal of the prior mortgage after the expiration of two years following its maturity.''

It is apparent from a reading of the facts and decision in that case that subsequent mortgagee had no notice, other than the constructive notice afforded by the filing of the chattel mortgage in the proper office, and that when it was not renewed by the filing of the affidavit required by § 3782, that mortgagee, having acquired rights subsequent to the maturity of the prior mortgage and, it not being renewed within two years, acquired superior rights.

We do not think that case fits the facts and situation in this case. As pointed out by the trial judge, if the language of the opinion is to be given its full force, and our statute is, in substance, a statute of limitation, the statute of limitation can be tolled, and in this case the conduct of appellant and respondent in dealing with the mortgages would seem to have that effect, as held by the trial judge.

Appellant also cites our cases holding that, as Rem. Comp. Stat., § 3780 [P. C. § 9747], requires a mortgage of personal property to be accompanied by an affidavit of the mortgagor that it is made in good faith, without any design to hinder, delay or defraud creditors, and that it be acknowledged and filed within ten days from the time of its execution in the office of the county auditor; that such mortgage as against all creditors of the mortgagor, both existing and subsequent, whether or not they have a claim or lien upon such property, and against all subsequent purchasers, pledgees, mortgagees or incumbrancers for value, and

in good faith, a mortgage deficient in execution or untimely filed, is void; citing *Hinchman v. Point Defiance R. Co.,* 14 Wash. 349, 44 Pac. 867; *Blumauer v. Clock,* 24 Wash. 596, 64 Pac. 844; *Smith v. Allen,* 78 Wash. 135, 138 Pac. 683; *Belcher v. Young,* 90 Wash. 303, 155 Pac. 1060; *Kato v. Union Oil Co.,* 92 Wash. 473, 159 Pac. 692; *Embagi v. Northwestern Improvement Co.,* 101 Wash. 558, 172 Pac. 834.

Under § 3780, mortgages not executed in strict accordance with the statute, and not filed within ten days after execution, are declared to be *void* and of no effect as to all persons listed in the statute, which is the rule of those cases.

Section 3782 does not declare that mortgages become *void* upon failure to file the affidavit prescribed therein within two years, but that they cease to be notice— "shall cease to be notice" as against creditors of the mortgagors and subsequent purchasers and mortgagees in good faith. They are undoubtedly still valid as between the parties until the statute of limitations on such instruments has run. Of course, if no one has any notice of the existence and subsequent non-satisfaction of a chattel mortgage, except the constructive notice given by the filing thereof in the county auditor's office, the chattel mortgage ceases to be notice and becomes invalid after the lapse of the two year period prescribed by statute for filing the affidavit of renewal.

Here, appellant had better notice than constructive notice imparted by filing, for it had actual notice; had dealt with respondent as an existing prior mortgagee.

In *Othello State Bank v. Case Threshing Machine Co.,* 113 Wash. 680, 194 Pac. 563, referring to a mortgage as to which no affidavit of renewal had been filed, we said:

"Such a mortgage would be invalid as between uninformed subsequent third parties and valid as

between the parties thereto and subsequent parties possessed of full knowledge of all the circumstances; and, in the case on hand, the extension of the mortgage of the appellant carried with it, as far as the respondent is concerned, the benefit afforded by § 3662 [3782], for the statutory period beyond the date of the extension granted, and it is no answer to this to say that the operation of the statute was not discussed or that the respondent had done everything which it had agreed to do in the arrangements between itself and the appellant and the defendant Bagwell. It is now estopped from claiming a priority for its mortgage.''

In the case at bar, appellant contends that nothing it did had any reference to the application of the statute requiring a renewal affidavit to be filed, or that it gave respondent to understand that it would waive the filing of the renewal affidavit. That, we think, is answered by the quotation from the above decision. See also *Clark v. Kilian*, 116 Wash. 532, 199 Pac. 721; *Asbury v. Miller*, 132 Wash. 235, 232 Pac. 360.

Again, in *Farmers State Bank v. McCulley*, 133 Wash. 364, 233 Pac. 661, where a situation very similar to that existing in this case was before the court, we said:

''The statute deals with the subject of constructive notice and is intended for the protection and benefit of creditors of the mortgagor and subsequent purchasers and mortgagees in good faith. It is of no use under the facts in this case. . . . The statute itself operates only for the benefit of creditors, subsequent purchasers and mortgagees who became such 'in good faith after the expiration of the time said mortgage becomes due.' . . . The cross-appellant is a subsequent incumbrancer. It is upon such an instrument it claims priority over the mortgage of the appellant. By the evidence in the case there is a very grave dispute but that, shortly before cross-appellant received its mortgage,

it was informed of appellant's mortgage by an officer of the bank. In one memorandum opinion of the trial court it is stated that such information was given. But, aside from any consideration of that dispute, the cross-appellant did have actual notice of the prior mortgage. Its mortgage from the McCulleys states that the property is 'free from all incumbrances except mortgage of record.' Its mortgage from Gertson states the same thing. The bank's mortgage was of record at each of those dates. . . . It thus appears that the cross-appellant was not a subsequent incumbrancer in good faith within the purview of the statute relied on.''

In the case before us it is undisputed, and the trial court found, that appellant received its mortgage with notice of the existence of respondent's mortgage.

We are convinced that, under the evidence as set forth in the findings of the trial judge, and our cases above cited, the decision of the trial court was correct.

·Judgment affirmed.

Tolman, C. J., Fullerton, Main, and Mitchell, JJ., concur.